# CLARENCE LITZ v. STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Northwestern Security Ins. Co. and Betty Hurd.
## —435 S.W.(2d) 124.

Eastern Section. June 3, 1968.

Certiorari Denied by Supreme Court November 4, 1968.

586

Blue & Fuller of Kingsport for appellee, Clarence Litz.

Smoot & Hawkins of Kingsport for appellees, Betty and Tommy Hurd.

Hunter, Smith, Davis, Norris, Waddey & Treadway of Kingsport, for appellant State Farm Mutual Automobile Ins. Co.

Simmonds, Herndon, Fortune, Johnson & Coleman of Johnson City for appellant Northwestern Security Ins. Co.

McAMIS, P. J.  This case presents a contest between State Farm Mutual Automobile Insurance Company and Northwestern Security Insurance Company as to liability under their respective policies for damages growing out of an accident involving an Oldsmobile automobile. The Chancellor held each of the companies liable for one-half the two judgments obtained by defendants Betty and Tommy Hurd for injuries sustained in a collision between the Oldsmobile and their own car on October 24, 1965. Both companies have appealed.

The bills were filed by Clarence Litz, driver of the Oldsmobile, against the two insurance companies and the two claimants, Betty and Tommy Hurd, for a declaratory decree establishing the liabilities of the two companies for the judgments rendered against him in favor of the Hurds and to enjoin the Hurds from enforcing their respective judgments until the question of the liability of the two insurance companies could be determined.

The question grows out of a complicated state of facts, requiring a narration of events preceding the accident in some detail.

The Oldsmobile was owned by Oscar S. Horne at the time of his death in the State of Virginia on October 5, 1965. Mr. Horne had lived with his wife in Kingsport, Tennessee, until their separation approximately 18 months prior to his death. At the time of his death he had been living in Virginia, separate and apart from his wife, for six or eight months. His wife and two of his married children lived in Kingsport. His only other child

was in service and at the time of Mr. Horne's death was hospitalized in Washington, D. C.

After moving to Virginia, Mr. Horne purchased the Oldsmobile here in question, received a Virginia title certificate and purchased a public liability policy in State Farm through its agent, Mr. Wells of Gate City, Virginia. He was still employed in Kingsport, Tennessee, where he owed some debts, including a loan from Kingsport National Bank on the Oldsmobile. He also owned as tenant by the entirety some real property in Kingsport. Apparently he owned no personal property in Tennessee and owed no debts in Virginia.

With Mr. Horne's affairs in this posture, the three children and the widow agreed that the daughter, Mrs. Litz, would qualify as Administratrix of her father's estate. No consideration was given to the fact the residence of Mr. Horne was in Virginia and Mrs. Litz duly qualified as Administratrix in the County Court of Sullivan County, Tennessee, and received letters of administration on October 14, 1965. Pursuant to an agreement by the widow and three children that the balance owing on the car represented its full value, Mrs. Litz as Administratrix on October 22, 1965, executed a bill of sale for the car transferring it to herself. The consideration for the transfer was that she had paid off the lien at the Bank. On the same day she submitted the Virginia certificate issued to her father and the bill of sale from herself as Administratrix and applied through the County Court Clerk of Sullivan County for a Tennessee title certificate. The Virginia license and tags had not been changed at the date of the accident, two days later.

On October 24, 1965, on a trip to visit her aunt, having nothing to do with her duties as Administratrix, Mrs.

Litz requested her husband, complainant in these cases, to drive the Oldsmobile. While he was driving the accident occurred, giving rise to the two judgments now outstanding against him. At the time of the accident Mr. Litz had excess coverage on his own car in defendant, Northwestern Security Insurance Company.

. State Farm insists that coverage under its policy terminated prior to the accident with the transfer of title by Mrs. Litz as Administratrix to herself and insists, alternatively, that it is not liable under a provision of its policy hereinafter copied controlling liability after the death of the named insured. Northwestern Security insists the qualification of the Administratrix in Tennessee for a Virginia resident was void and of no effect and that the Administratrix could not effect a legal transfer of title in the manner attempted; that the State Farm policy was, therefore, still in effect at the time of the accident and constitutes primary insurance. Its own secondary liability is admitted.

The Chancellor, without making a specific finding as to title, concluded as a matter of equity, that, under the circumstances, the liability should be borne equally by the two insurance companies. We consider first the appeal of State Farm.

. In considering whether there had been an effective transfer of title prior to the accident we must bear in mind that cases like Tennessee Farmers Ins. Co. v. Canal Ins. Co., 58 Tenn.App. 1, 425 S.W.2d 762, cited in the briefs, involve a question entirely different from the question here presented. In the case cited the question whether title had passed from the named insured was considered only as bearing on the determinative ques-

tion whether the driver was an additional insured by reason of having obtained the insured's permission to drive. Obviously if title had passed to the driver he was driving in his own right and not by permission of the insured. For that reason only it was necessary to determine whether title had passed to the driver.

Here the question is whether as between the company and its insured the liability of the insurer had terminated by reason of a transfer of title. A construction of the term "owned automobile" is involved. Leaving to one side for the time being the effect of the insured's death, the question is: Was the car in the sense of the policy still owned by the insured at the time of the accident? We think it was.

In Tennessee Farmers Mutual Ins. Co. v. Canal Ins. Co., supra, we noted the conflict of authority on the question whether, as between the parties, title can pass without a compliance with the statutory requirements. Under the facts of that case it was unnecessary to decide the point. Here apparently, it was the intention of all interested parties to pass title. The Administratrix in the absence of fraud or unfairness not here shown could without a public sale transfer title from herself as Administratrix to herself as an individual. Phillips Pritchard on Wills and Administration of Estates, Section 707. And it is at least questionable whether Northwestern can question the validity of the appointment of the Administratrix in Tennessee.

■ However, the insured was still the record owner of the insured automobile with the license still in his name making him subject to the presumption that any one driving it was his agent and acting within the scope of

his authority. And the insurer by the terms of its policy was required to defend any such suits even though groundless. We think, construing the language of the policy liberally in favor of the insured, and in the absence of more definitive terms, the car was still an ''owned automobile'' in the sense of the insurer's obligation under the policy, during this twilight period when the legal title was still in process of being transferred. Any other construction would leave the insured seller without protection during this period in respect to the insured automobile. It is also to be noted that during this period, the policy not having been canceled, the insured was still paying for this protection. This is not to say that, during this period, the insurer would be obligated to defend the new owner unless he was driving with the consent of the insured.

The alternative defense interposed by State Farm is predicated upon the following provision of its policy:

''14. *Assignment*. Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the insured named in Item 1 of the declarations, or his spouse if a resident of the same household, shall die, this policy shall cover (1) the survivor as named insured, (2) his legal representative as named insured, but only while acting within the scope of his duties as such, (3) any person having proper temporary custody of an owned automobile, as an insured, until the appointment and qualification of such legal representative, and (4) under Division I of Part II [Medical Expense Coverage] any person who was a relative at the time of such death.'' (Brackets added)

If the insurer can be held liable under this provision of the policy it must be either under (2) or (3).

Liability under (2) is excluded because the undisputed evidence shows Mrs. Litz was not driving within the scope of her duties as Administratrix but was upon a personal mission of her own.

■ Since the personal representative had already qualified, we are also of opinion Mrs. Litz was not a "person having proper temporary custody of an owned automobile, as an insured, until the appointment and qualification of such legal representative." According to all the evidence Mrs. Litz, following the execution of the bill of sale to herself and payment of the lien indebtedness, considered the car belonged to her. Therefore, neither can she be said to have been a person having "temporary" custody of the car at the time of the accident.

■ It is insisted in behalf of Northwestern that, since the officials of State Farm, with knowledge of the death of the policy holder and the subsequent accident, made the cancellation effective as of 12:01 A.M. October 26, 1965, which was two days after the accident and still retains the premium for the period from the date of the policy holder's death until that date, it can not escape liability for an accident that occurred before the effective date of the cancellation. We can not follow this argument. As we have seen, the policy continued in force after the death to protect the personal representative while acting as such so that the liability of the Company, though limited by the provision of the policy above copied, continued during the period between the death of the policy holder and the date of the accident. We see no reason why it can not claim the benefit of these limitations on its liability even though it was paid a premium for the period following the death of the policy holder.

It results that the decree will be modified to relieve State Farm Mutual Automobile Insurance Company of all liability and judgments will be rendered against Northwestern Security Insurance Company and sureties on its appeal bond for the full amount of both judgments with interest and all costs in both cases.

Cooper and Parrott, JJ., concur.