490 A.2d 1321
**Leonard OROIAN, et al.**

v.

**ALLSTATE INSURANCE COMPANY.**

**No. 1192, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

April 16, 1985.

Leon Shampain, Riverdale (Vaughan & Shampain, Riverdale, on brief), for appellants, Oroian and Maryland Auto. Ins. Fund.

John T. Hull and Donahue, Ehrmantraut & Montedonico, Rockville, on brief, for appellant, Breininger.

Phillip R. Zuber, Upper Marlboro (Sasscer, Clagett, Channing & Bucher, Upper Marlboro, on brief), for appellee.

Argued before ADKINS, BLOOM and ROBERT M. BELL, JJ.

ADKINS, Judge.

When John Haring died on April 25, 1982, he was the named insured under an "Allstate Automobile Policy" issued by appellee, Allstate Insurance Company. He was also the owner of a pickup truck listed as an "insured automobile" in that policy. On June 28, 1982, his sister, Nancy Haring, was named personal representative of his estate. A month later appellant Leonard Oroian, while driving the truck for his own purposes, was involved in an accident in which appellant Louise Breininger and Cathie Perrigon (not an appellant) were injured.

Perrigon, it seems, filed a tort action against Oroian, Haring's estate, Nancy Haring, and Breininger. Apparently, the bases of this suit were that Oroian was negligent, John Haring's estate was liable because Oroian was operating the truck as an agent of the estate, and Nancy Haring negligently entrusted the vehicle to Oroian and permitted him to operate it in violation of the motor vehicle laws.[1] Allstate refused to defend or provide any coverage for Oroian.

---

1. We can only speculate as to the contents of the tort declaration, since it is not included in the record before us. What we have said about it is gleaned from the admitted allegations in Allstate's declaratory judgment action, which is the subject of this appeal.

Allstate then brought a declaratory judgment action in the Circuit Court for Prince George's County. It named as defendants appellants Oroian, Maryland Automobile Insurance Fund (Perrigon's uninsured motorist carrier), and Breininger, as well as Nancy Haring (not an appellant), individually and as personal representative of Haring's estate, and Perrigon. The insurer sought a declaration that "Allstate Insurance Company ... has no duty to defend or provide any coverage for Leonard Ordian [*sic* ] and Nancy Haring...."

Oroian answered and requested a "decree declaring that [Allstate] afford coverage and a defense to him in regard to subject accident." He also asked for attorney's fees and expenses in both the tort action and the declaratory judgment case. MAIF answered and requested "a decree declaring that [Allstate] afford coverage and a defense to defendant Oroian in regard to subject accident." MAIF also filed a counterclaim for attorney's fees and other expenses "for the reason that [Allstate] ... has failed and refused to afford ... Oroian ... coverage and a defense for claims arising from said accident...." The other defendants, in their answers, simply prayed for "a declaration of the rights and duties of all parties herein."

In due course the declaratory judgment came in for hearing before Judge Albert T. Blackwell, Jr. On June 25, 1984, after an evidentiary hearing, he declared "that ... Allstate Insurance Company has no duty to defend or provide coverage to Leonard Oroian for the July 28, 1982 accident involving Cathie Perrigon and Louise Breininger...." On September 10, 1984, he entered a "Final Order" which supplemented the June declaration by stating "that the duty of plaintiff ALLSTATE INSURANCE COMPANY in regard to the duty to defend or provide coverage to NANCY HARING, individually and as the Personal

Representative of the Estate of JOHN HARING has not been addressed."[2]

From that order, appellants have appealed. They ask whether the court erred

1. in admitting a computer printout as evidence of John Haring's status as named insured?

2. in declaring that Oroian's operation of the pickup truck was not covered by the Allstate Policy? and

3. in declining to address the issue of Nancy Haring's coverage.

We shall affirm.

### Computer Printout

At trial Allstate introduced into evidence a computer printout. This was the only evidence that John Haring was the "named insured" under the subject insurance policy. His status as "named insured," as we shall see, was important to the issue of Oroian's coverage. Appellants now question whether that document "unsigned, unverified, unauthenticated, satisfactorily establishes John Haring as the sole named insured?" Allstate responds that the printout was properly admitted as a business record (Md.Cts. & Jud.Proc. Art. § 10–101 (1984)) through the testimony of its witness, claims adjuster Linda Burnett.

■ We need not decide these contentions. Appellants, in their brief, have cited no authority for their position. We deem it waived. *See Larmore v. Larmore,* 241 Md. 586, 589–90, 217 A.2d 338 (1966); *Jacober v. High Hill Realty, Inc.,* 22 Md.App. 115, 125, 321 A.2d 838, *cert. denied,* 272 Md. 743 (1974). Haring's status as named insured was virtually conceded by appellants' answers to Allstate's demand for admissions of fact.

---

2. Although the court did not expressly dispose of MAIF's counterclaim or Oroian's request for fees and expenses, both of these claims were necessarily rejected by its declaration that Allstate had no duty to defend or provide coverage for Oroian.

## Oroian's Coverage

Absent a policy provision extending coverage, an automobile liability policy lapses on the death of the named insured. 9 R. Anderson, *Couch Cyclopedia of Insurance Law* § 39.243 (2d ed. 1962); 7 Am.Jur.2d *Automobile Insurance* § 12 (1980). The Allstate policy now before us contains such a provision. General Condition 7 informs us

... if the named insured, or his spouse as a resident of the same household, shall die, this policy shall cover:

(a) the survivor as named insured;

(b) his legal representative as named insured but only while acting within the scope of his duties as such; and

(c) with respect to an owned automobile, any person having proper temporary custody as insured, until the appointment and qualification of such legal representative.

We need only consider the effect of paragraph (b). Paragraph (a) clearly applies to the "survivor" of the named insured (John Haring) and his spouse; the record discloses no surviving spouse. Paragraph (c) is inapplicable because the accident in question occurred after Nancy Haring's appointment and qualification as personal representative of John's estate. *Federated Mutual Implement and Hardware Ins. Co. v. Eng*, 178 N.W.2d 321, 323 (Iowa 1970). Nancy Haring, then, was the named insured if the use of the truck on the night of the accident was the result of her "acting within the scope of her duties" as personal representative. Only if she were the named insured, could Oroian have been covered by the policy.

The facts bearing on this question are reasonably straightforward, although not altogether undisputed. Oroian was a close friend of the Haring family. He was among the first to find John Haring dead. Just before John's sudden demise he had been "rototillering a garden" for his sister, Nancy. The rototiller, the property of Ray Harbaugh, had been transported in John's pickup truck. After John's death, Oroian placed the rototiller in the truck and

drove to Harbaugh's home. There the truck remained for several weeks, when Oroian retrieved it. Nancy knew the whereabouts of the truck and knew Oroian had taken possession of it. Oroian testified she imposed no restrictions on his use of the vehicle. Nancy said she had never given him permission to use the truck. There was evidence, however, that Nancy acquiesced in Oroian's possession of the truck for the purpose of keeping it in proper shape until it was appraised for estate purposes. There was evidence that Nancy was willing to sell Oroian the truck after that had been accomplished, although Nancy's brother, Skip, wanted to give the truck to Oroian. In any event, it was clear, as Oroian himself said, that on the night of the accident he was not using the vehicle for any estate-related purpose, but rather for his "own purposes."

Appellants argue that the critical question on the issue of coverage for Oroian is whether Oroian had permission to use the truck at the time of the accident. Judge Blackwell saw it otherwise. He found "a dispute as to the question of whether Oroian had permission to operate the truck." He found "an agreement between [Oroian and Nancy] that Oroian would have possession of the truck, but that there was no agreement concerning its use." But he concluded that the issue of permissive use was not critical:

> This court[,] however[,] does not have to resolve the issue of permissive use of the truck..., for even assuming Oroian had permission to use the truck, he does not fall within the second requirement, that he be acting within the scope of the duties of the personal representative.

We agree with Judge Blackwell's conclusion.

By the terms of Allstate's policy, it was required to "pay for an insured all damages which the insured shall be legally obligated to pay because of ... bodily injury sustained by any person, and ... injury to or destruction of property, arising out of the ownership, maintenance or use ... of the owned automobile...." Persons insured include "[t]he named insured with respect to the owned automobile"

and "[a]ny other person, with respect to the owned automobile, provided the use thereof is with the permission of the named insured and within the scope of such permission...." Because of John Haring's death, and by virtue of General Condition 7(b), his personal representative, Nancy Haring, was the named insured at the time of the accident, but *only* "while acting within the scope of [her] duties as such...." If, therefore, Oroian's use of the vehicle at the time of the accident was not within the scope of Nancy's duties as personal representative, she was not then the named insured and, as Judge Blackwell ruled the question of permissive use was unnecessary to decide. Under that hypothesis, there could be no named insured and hence no use of the truck by or with permission of a named insured.

Maryland law defines the scope of a personal representative's duties. The personal representative is a fiduciary who "is under a general duty to settle and distribute the estate of the decedent ... as expeditiously and with as little sacrifice of value as is reasonable under the circumstances." Md.Est. & Trust Art. § 7–101(a) (1974). Pursuant to the general duty, the personal representative must "... take possession or control of the estate of the decedent..." (§ 7–102), "... prepare and file an inventory of property owned by the decedent at the time of his death..." (§ 7–201), cause the property to be appraised (§ 7–202), and file accounts (§§ 7–301–307). The personal representative also possesses the powers listed in § 7–401.

Neither any § 7–401 power nor any other statutory authority conferred on a personal representative permits her to use an estate-owned vehicle for personal, non estate-related purposes.[3] Nor do these provisions authorize a personal representative to permit another to use estate proper-

---

**3.** Section 7–102 permits the personal representative under some circumstances to allow an heir or legatee to retain possession of property to which that person is "presumptively entitled." Oroian was neither heir nor legatee. At best, he was a prospective purchaser or donee of the truck.

ty for such purposes. It may have been proper, and within the scope of Nancy Haring's duties as personal representative, to give Oroian custody of the truck in order to keep it in good shape pending appraisal. That, however, is a far cry from giving Oroian permission to use the pickup for his own purposes.

It will be recalled that at the time of the accident Oroian, by his own admission, was using the truck on a purely personal venture. His visit to a bar that night had no conceivable connection with administration of John Haring's estate. Judge Blackwell so found, and his finding was amply supported by the evidence. On the basis of this he declared that Oroian was not covered by the Allstate Policy at the time of the July 28, 1982, accident. We hold that he did not err.

Although we have found no reported Maryland case that addresses this question, two out-of-state decisions are instructive. The first is *Federated Mutual Implement Hardware and Ins. Co. v. Eng, supra.* Before the Supreme Court of Iowa in that case was an insurance policy provision identical to Allstate's General Condition 7(b). The facts were that a collision occurred when the deceased-named insured's executor was operating a vehicle the deceased had owned. The trial court found that the executor had been driving the car on estate business ("while acting within the scope of his duties as" executor) and declared that there was coverage. The Supreme Court of Iowa affirmed. *Id.* at 324–25. That case, of course, is the converse of this one where the vehicle was not being operated on estate business. *Eng,* therefore, stands for the proposition that there is coverage under a 7(b)-type provision when an accident occurs while the vehicle is used for estate purposes.

The other side of the coin is illustrated by *Litz v. State Farm Mutual Automobile Ins. Co.,* 58 Tenn.App. 585, 435 S.W.2d 124 (1968), *cert. denied* (1968). State Farm's policy in that case was, again, identical to Allstate's General

Condition 7(b) in this case. The facts were that the decedent's administratrix and her husband (the driver of the car) were on a personal junket when the accident occurred. Holding that no coverage existed, the Tennessee intermediate appellate court reasoned: "Liability ... is excluded because the undisputed evidence shows that Mrs. Litz was not driving within the scope of her duties as Administratrix but was upon a personal mission of her own." 435 S.W.2d at 127.

Appellants attempt to distinguish *Litz* by pointing out that two days before the accident Mrs. Litz, *qua* administratrix, had sold the car to Mrs. Litz, individually. That is true, but it makes no difference. For reasons not important here, the *Litz* court treated the case as though no transfer had occurred and as if the vehicle had been an "owned automobile" under State Farm's policy. *Litz*, therefore, is authority for the proposition that there is no coverage under a 7(b)-type provision when the vehicle is not being operated on estate business.

We find *Litz* persuasive. Under its reasoning, had Nancy Haring been driving the pickup truck on personal business, there would have been no coverage. The same result follows when Oroian was driving the vehicle on a personal venture. Even if he is considered as some sort of additional insured, "his rights can be no greater than the rights of the named insured." *DeJarnette v. Federal Kemper Ins. Co.*, 299 Md. 708, 723–24, 475 A.2d 454 (1984). In short, since the truck was concededly not being operated on estate affairs, no coverage existed for the accident in question, regardless of how permissive the use of the truck might have been.

*Lack of Declaration as to Nancy Haring's Coverage*

We turn now to the most difficult question in this case: Must we reverse because Judge Blackwell declined to issue a declaration as to Nancy Haring's coverage? We first consider the circumstances in which this issue arose.

It will be recalled that Allstate had sought declarations as to non-coverage with respect both to Oroian and Nancy Haring. In its trial memorandum it addressed only the former issue. Only that issue was argued before Judge Blackwell when, as we have seen, on June 25, 1984, he signed a memorandum and order deciding it.

This troubled Oroian and MAIF. After their motion for new trial was denied, they filed a "Petition for Entry of Final Judgment." In it they pointed out that Allstate had sought declarations as to both Oroian and Nancy Haring, but that only Oroian's lack of coverage had been decided. They expressed fear that because of this all claims had not been adjudicated; thus there was no final judgment from which they could appeal. Former Md.Rule 605a; present Rule 2–602.

Allstate responded, saying among other things, that in view of Judge Blackwell's decision there could be no doubt as to Nancy Haring's coverage, that the January 25 order was a final, appealable judgment and that Allstate had in effect withdrawn its request for a declaration as to Haring.

The matter came on for hearing on September 10. Apparently, a proposed order was presented to Judge Blackwell. It is not in the record, but from the hearing transcript we infer that it contained a declaration of no coverage as to Nancy Haring. Judge Blackwell thought there might be at least a duty to defend her under the negligent entrustment count of the tort declaration. Counsel for Oroian and MAIF (the parties who had petitioned for a final judgment) then suggested "you can order that the court will not pass upon that at this time, on her...." Counsel for Haring objected to an order declaring no coverage for her. He agreed with Allstate that its request for a declaration as to Haring had been withdrawn. He and counsel for MAIF and Oroian eventually agreed that it would be both

appropriate and sufficient for the order simply to provide that the court had declined to rule as to Haring.[4]

That is what eventually happened. On the same day Judge Blackwell signed the following order:

## FINAL ORDER

This is a declaratory judgment action brought by ALL-STATE INSURANCE COMPANY to resolve a coverage dispute as to multiple parties. The facts of the case are complex and have been stated and reviewed in this court's Memorandum and Order dated June 25, 1984, . . . and it is not necessary to repeat them.

The court, having previously declared in its said Memorandum and Order of June 25, 1984, that . . . ALLSTATE INSURANCE COMPANY has no duty to defend or provide coverage to Leonard Oroian for the July 28, 1982, accident . . ., now, to finally decide the matter and to render a final judgment herein, states that it is further

ORDERED, that the duty of . . . ALLSTATE INSURANCE COMPANY in regard to duty to defend or provide coverage to NANCY HARING, individually and as the Personal Representative of the Estate of JOHN HARING has not been addressed.

Appellants now contend (with some ill grace, in view of the concessions they made at the September 10 hearing) that Judge Blackwell erred in not addressing the question of Nancy Haring's coverage. They cite cases such as *Robert T. Foley Co. v. W.S.S.C.*, 283 Md. 140, 154–55, 389 A.2d 350 (1978) which hold that in a declaratory judgment action the trial court ordinarily must declare the rights of the parties in light of the issues raised—that is, make a declaration as to every claim presented. *See also Jennings v. Government Employees Ins. Co.*, 302 Md. 352, at 355, 488 A.2d 166, at 167 (1985); *Stevan v. Brown*, 54 Md.App. 235,

---

4. Although counsel for appellant Louise Breininger was not at the September 10 hearing, it appears that he had asked either counsel for Oroian and MAIF or counsel for Haring (it is not clear which) to represent her at it.

248, 458 A.2d 466, *cert. denied,* 297 Md. 110 (1983). This requirement has been applied regularly despite the apparently discretionary language of the Declaratory Judgments Act—"... a court *may* grant a declaratory judgment or decision in a civil case...." Md.Cts. & Jud.Proc. Art. § 3–409(a) (1984) [emphasis supplied].

Allstate counters by citing the statute and *Brohawn v. Transamerican Ins. Co.,* 276 Md. 396, 347 A.2d 842 (1975). In *Brohawn,* Judge Getty, the trial judge, dismissed Transamerica's action for a declaration as to non-coverage of an insurance policy. We reversed, reasoning that "[i]t is firmly established that seldom, if ever, should a bill or petition in a declaratory judgment proceeding be dismissed without a declaration of the rights of the parties" and that "[d]iscretion in the courts to refuse a declaratory judgment is very limited." 23 Md.App. 186, 195, 326 A.2d 758 (1974) [citations omitted], *rev'd,* 276 Md. 396, 347 A.2d 842 (1975).

The Court of Appeals disagreed. It held that "where ... the question to be resolved in the declaratory judgment action will be decided in the pending [tort] actions, it is inappropriate to grant a declaratory judgment." *Brohawn,* 276 Md. at 406, 347 A.2d 842. The Court also noted the discretion granted by § 3–409 of the Courts Article, observing that "[i]f the granting of the judgment would ... allow one party to wrest control of the litigation from another and cause a confusing alteration of the burden of proof, the court should refuse to grant the relief sought. [citation omitted] Under such circumstances, granting a declaratory judgment would constitute an abuse of discretion." *Id.* Applying these principles to the case before it, the Court of Appeals concluded that to allow Transamerica to litigate certain issues in the declaratory judgment case would allow the insurance company, and not the tort plaintiffs, to control the litigation. *Id.*

Much of this reasoning appears applicable here. It is true that some issues relating to Nancy Haring's coverage will be decided in the tort action. It is equally true that, as

a declaratory judgment action, this case presents a *Brohawn* problem in that it allows Allstate, and not the tort plaintiffs, to control the litigation. With regard to Nancy Haring's liability coverage, Judge Blackwell's discretionary decision not to address that question might well be supported by the *Brohawn* holding. But that is not necessarily so as to the related question of whether Allstate had a duty to defend Haring. If nothing else, it may have owed her a defense, at least in her capacity as personal representative. *See Brohawn*, 276 Md. at 407–15, 347 A.2d 842. *See generally St. Paul Fire & Mar. Ins. Co. v. Pryseski*, 292 Md. 187, 438 A.2d 282 (1981)[5] (duty to defend broadly construed).

■ Having said all this, however, we conclude that we need not decide whether to apply *Brohawn* or appellants' theory to this case. We hold that what Judge Blackwell did in his "Final Order" of September 10, 1984, was the functional equivalent of the granting of a motion for voluntary dismissal under Md.Rule 2–506(b). Subject to exceptions not here pertinent, that rule provides that:

> [A] plaintiff may dismiss an action only by order of court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded prior to the filing of the plaintiff's motion for voluntary dismissal, the action shall not be dismissed over the objection of the party who pleaded the counterclaim unless the counterclaim can remain pending for independent adjudication by the court.

This rule speaks in terms of dismissal of "an action" but we think it applies equally to dismissal of a separate claim in an action. *See Mildred Davis, Inc. v. Hopkins*, 224 Md. 626, 169 A.2d 450 (1961) (applying former Rule 541). Otherwise, there would be no available mechanism for the voluntary dismissal of such a claim. Allstate, the plaintiff below,

---

**5.** The record suggests that Allstate conceded its duty to defend Haring, at least in her capacity as personal representative.

asserted a separate declaratory judgment claim with respect to coverage of Nancy Haring and its duty to defend her. It effectively withdrew or abandoned that claim when it omitted it from its trial memorandum and when it did not present that claim in oral argument. *Cf. Shafer v. Bernstein,* 256 Md. 218 at 219, 260 A.2d 57 (1969) (withdrawal of one claim in declaratory judgment case). This was tantamount to a motion for voluntary dismissal. The court effectively granted that motion in its September 10 order, thereby satisfying the requirement that voluntary dismissal (after the introduction of evidence under former Rule 541(b); after the filing of an answer or a motion for summary judgment under Rule 2–506(a–b)) be accomplished by order of court absent a stipulation of dismissal signed by all parties.

There was, to be sure, a counterclaim in this case, filed by MAIF. That counterclaim addressed only the Oroian coverage question and was disposed of by Judge Blackwell's declaration on that issue. In any case, MAIF did not object to the September 10 order. Oroian's answer to the declaratory judgment application was not a separate claim or counterclaim. It merely requested the converse of what Allstate had requested as to him. *East v. Gilchrist,* 293 Md. 453, 459–60, 445 A.2d 343 (1982). And if appellant Breininger's answer be deemed a counterclaim (she prayed for "a declaration of the rights and duties of all parties herein") she, too, failed to object to the September 10 order. The same is true as to non-appellant Perrigon.

Thus, the September 10 "Final Order" did, indeed, produce a final judgment. It did so by in effect dismissing Allstate's Haring claim, thereby disposing of the only claim not adjudicated in the prior June 25 memorandum and order. By virtue of Judge Blackwell's September 10 action, all claims were disposed of and Rule 2–602 was satisfied. That action dismissed Allstate's claim as to Nancy Haring without prejudice because it did not specify otherwise. Rule 2–506(c). It rendered Allstate "responsible for all

costs of ... the part [of the action] dismissed." Rule 2–506(d).

We, therefore, affirm the judgment below.

JUDGMENT AFFIRMED.

APPELLANTS TO PAY THE COSTS.