773 A.2d 592

Philip R. SODERGREN,

v.

The JOHNS HOPKINS UNIVERSITY APPLIED
PHYSICS LABORATORY, et al.

No. 1407, Sept. Term, 2000.

Court of Special Appeals of Maryland.

June 1, 2001.

**688**

Paul F. Newhouse, Towson, for appellant.

Jeffrey P. Ayres (Robin B. Bowerfind and Venable, Baetjer and Howard, LLP, and Valerie Floyd Portner, Laurel, on the brief), for appellees.

Argued before MURPHY, C.J., KENNEY and RAYMOND G. THIEME (Ret'd, specially assigned), JJ.

KENNEY, Judge.

Appellant, Philip R. Sodergren, appeals a decision by the Circuit Court for Howard County granting appellees' motion for summary judgment. He presents one question:

> Whether the trial court erred in holding that a privilege to defame arising in the context of the litigation process protects appellees in this action, who published defamatory letters concerning appellant as part of the settlement of a prior action.

## FACTUAL BACKGROUND

This case involves claims of defamation and invasion of privacy arising out of two letters written by appellee Dr. Gary L. Smith on behalf of appellee The Johns Hopkins University

Applied Physics Laboratory ("APL") [1] as part of a settlement agreement in a federal lawsuit filed by Patricia Herchenroeder. Sodergren and APL were both defendants in Herchenroeder's lawsuit, which eventually settled out of court. Pursuant to the terms of the settlement, neither APL nor Sodergren admitted liability, and Herchenroeder dismissed all claims against Sodergren and APL with prejudice.

As part of the agreement, APL issued written apologies to Herchenroeder and, also, to Warren Boord, who was not a party to the federal lawsuit. [2] Sodergren did not sign the settlement agreement or the letters and was, in fact, vehemently opposed to both. Moreover, the agreement was not subject to approval by the federal court.

The settlement agreement contained the following language pertinent to the letters of apology:

2. *Letters*

Dr. Gary L. Smith, Director of APL, shall execute originals of the letters attached hereto as Exhibits A-1 through A-6, [3] and APL shall deliver these letters to Thomas L. McCally, Esquire, within 5 business days after the execution by all parties of this Settlement Agreement and General Releases and of the Covenants Not to Sue attached to and incorporated in this Agreement. APL acknowledges that Mr. Sodergren objects to Ms. Herchenroeder and Mr. Boord being provided with Exhibits A-3 and A-4 by APL. Notwithstanding any other provisions in this Agreement,

---

1. Smith was the Director of APL at all pertinent times.

2. The federal lawsuit involved allegations that Sodergren had sexually harassed Herchenroeder when Sodergren was her supervisor at APL. Herchenroeder also alleged that, after she rebuffed Sodergren's advances, he retaliated by filing plagiarism charges against her. Sodergren made formal plagiarism charges against Herchenroeder and Warren Boord. Boord was not a party in the Herchenroeder litigation, but he did make complaints within the Johns Hopkins University system.

3. The letters of apology were attached to the settlement agreement as Exhibits A-3 and A-4. The other letters referenced in this paragraph did not pertain to Sodergren.

including but not limited to the Confidentiality Clause, Paragraph 5 below, Ms. Herchenroeder is free to disseminate Exhibits A–1 through A–6 as she sees fit.

\* \* \*

9. *Agreement Not Admissible In Future Proceedings.*

This Agreement is intended to be inadmissible, in evidence or otherwise, in any future judicial or administrative proceedings, except that:

\* \* \*

(b) this Agreement and the exhibits thereto labeled A–3 and A–4 may be referred to, and nothing in this Agreement shall make them inadmissible, in any action brought by Mr. Sodergren based upon the providing to Ms. Herchenroeder and/or Mr. Boord, or the subsequent use of publication, of Exhibits A–3 and A–4.

\* \* \*

19. *Suit Regarding Exhibits A–3 and A–4.*

Nothing in this Agreement shall be construed to prevent or limit Mr. Sodergren from bringing an action against Dr. Gary Smith and/or APL, based upon Exhibits A–3 or A–4, and nothing in this Agreement shall be construed to prevent or limit Dr. Gary Smith and/or APL from bringing an action against Mr. Sodergren with respect to the subject matter of Exhibits A–3 and A–4.

The letters of apology to Herchenroeder and Boord, signed by Dr. Gary L. Smith, were identical and read as follows:

On behalf of APL I sincerely apologize for the totally inappropriate and unfounded charges of plagiarism that Phil Sodergren lodged against you. Despite the findings of the Screening Panel completely vindicating your actions and expressing concern that Phil Sodergren was motivated by strong emotion and clouded judgment, he pursued these charges with The Johns Hopkins University, possibly jeopardizing your reputations outside the Laboratory. His ac-

tion in appealing the Screening Panel's findings was consistent with our policy, but did not exhibit good judgment. Although the University affirmed the Screening Panel's findings that you did not plagiarize, I know how upsetting the plagiarism charges must have been to you. I regret the pain and suffering that these totally inappropriate and unfounded charges have caused you and your families.

Although Sodergren objected to the letters, he signed a "General Release and Covenant Not to Sue" that was attached to the agreement as Exhibit D–2. This document released Herchenroeder from liability "arising out of Ms. Herchenroeder's employment with APL or SEG,[4] or the termination of her employment with APL, and any other claims, actions or causes of action,[5] which arose at any time prior to the date of this Agreement." Sodergren's General Release and Covenant Not to Sue, attached to the agreement as Exhibit D–2, contains the following language: "[T]his paragraph does not release APL, The Johns Hopkins University, or their agents or employees. Moreover, this Release (and Covenant Not to Sue) shall not apply to acts of the Releasees which occur after the date of the execution of this Agreement by Mr. Sodergren."

As indicated, the letters concerned plagiarism charges made by Sodergren against Herchenroeder and Boord. In 1994, Sodergren alleged that they had used his and others' research without attribution. When he received no satisfaction from Herchenroeder's and Boord's superiors, he filed a formal complaint with the APL Screening Panel.

The Screening Panel reviewed the matter and found that Sodergren had brought the allegations "in some semblance of good faith" but that there was no plagiarism:

---

**4.** SEG was Herchenroeder's then-current employer.

**5.** The release lists a variety of possible causes of action that could be brought, but the release is intended to be general, and the list is not inclusive.

The Panel concludes that the allegations made by Mr. Sodergren of plagiarism on the part of Mr. Boord and Ms. Herchenroeder are without merit. The Panel further concludes that the allegations were brought by Mr. Sodergren (a) in some semblance of good faith but with his judgment clouded by emotionalism; (b) partially due to a lack of understanding occasioned by his emotional frame of mind; (c) partially without due care; and (d) following a pattern of interactions whose cumulative effect is inappropriate. The Panel believes that Mr. Sodergren's allegations can not be reviewed simply as manifestations of good faith misunderstandings. The Panel believes that Mr. Sodergren's allegations of plagiarism represent actions that are inappropriate, inspired by strong emotionalism and clouded judgment.

Sodergren did not agree with the definition of plagiarism used by the Screening Panel and appealed the decision to the Johns Hopkins University ("JHU") Provost, Dr. Joseph Cooper. Dr. Cooper reviewed the matter and issued written findings upholding the Screening Panel's decision. In light of these decisions, Sodergren was subsequently disciplined by APL by reprimand and a three week suspension.

On July 2, 1998, Sodergren filed a complaint against Smith and APL claiming defamation, false light invasion of privacy, and unreasonable publicity to private life of a person invasion of privacy. These claims were based on the publication of the apology letters pursuant to the settlement proceedings. APL and Smith filed their answer to Sodergren's complaint on November 10, 1998, and on May 14, 1999, they filed a motion for summary judgment. The motion for summary judgment set forth several grounds in support:

1) an absolute privilege protects the Defendants from liability as to all counts because the letters were published during the course of a judicial proceeding; 2) the letters are statements of opinion not recognizable to a third party as defamatory, and thus are not actionable; 3) the Plaintiff has not put forth evidence of any harm suffered as a result of the alleged defamatory statement; 4) Count II (false light invasion of privacy) fails because the Plaintiff has not put

forth evidence of the necessary "publicity"; 5) that Count III (unreasonable publicity of private facts) fails because the Plaintiff cannot show that the letters contained private information, and cannot show that the letters were subject to excessive publicity; and 6) lastly, punitive damages are not available to the Plaintiff because there is no evidence that Dr. Smith knew the statements in the letters were false at the time they were written.

The circuit court held a hearing on the motion on November 24, 1999, and took the matter under advisement. The court issued an extensive opinion on July 24, 2000, granting the motion for summary judgment on the grounds that the letters were subject to the absolute privilege accorded "statements made by judges, attorneys, parties and witnesses during the course of a judicial proceeding." This appeal followed.

## DISCUSSION

### *Standard of Review*

A summary judgment motion is not a substitute for trial. Rather it is used to dispose of cases when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. The standard for appellate review of a trial court's grant of summary judgment is whether the trial judge was legally correct in his or her rulings. In granting a motion for summary judgment, the trial judge may not resolve factual disputes, but instead is limited to ruling on matters of law.... If any inferences may be drawn from the well-plead facts, the trial court must construe those inferences in the light most favorable to the non-moving party. The existence of a dispute as to some non-material fact will not defeat an otherwise properly supported motion for summary judgment, but if there is evidence upon which the jury could reasonably find for the non-moving party or material facts in dispute, the grant of summary judgment is improper.

*Okwa v. Harper,* 360 Md. 161, 178, 757 A.2d 118 (2000) (citations omitted).

There appears to be no dispute of material fact in this case. Rather, the issue is whether the circuit court correctly ruled, as a matter of law, that the letters that form the basis for Sodergren's claim were covered by the absolute privilege relating to judicial proceedings.

### The Circuit Court's Ruling

The applicability of the absolute privilege to settlement matters is one of first impression in Maryland. Accordingly, the circuit court conducted a thorough review of the case law, both in Maryland and elsewhere, before issuing a detailed ruling. The circuit court's conclusions were as follows:

Although the Maryland appellate courts have not yet addressed the issue of absolute privilege in the context of settlement documents, existing case law supports an interpretation consistent with other jurisdictions affording an absolute privilege to settlement related documents published during the course of a judicial proceeding. The failure of the settlement documents to be part of the court record does not affect such a result, nor does the publication of the letter to Warren Boord.

Simply stated, "public interest in free disclosure" during settlement outweighs the "harm to individuals who may be defamed." *See Adams v. Peck*, 288 Md. [1] at 5 [415 A.2d 292], *citing Maurice v. Worden*, 54 Md. 233 (1880). Despite the alleged lack of procedural safeguards, it is apparent that privileged settlement agreements are necessary to the "free and unfettered administration of justice"; and for the "process to function effectively, those who participate must be able to do so without being hampered by the fear of private suits for defamation." *Adams v. Peck*, at 5 [415 A.2d 292]. For these reasons the letters of apology incorporated within the settlement agreement between APL and Herchenroeder are extended an absolute privilege. Thus, the Defendants' motion for summary judgment will be granted.

### The Absolute Judicial Privilege

■ Since 1888, Maryland has recognized an absolute privilege covering statements, including defamatory statements,

"uttered in the course of a trial or contained in pleadings, affidavits, or other documents related to a case." *Woodruff v. Trepel,* 125 Md.App. 381, 391, 725 A.2d 612, *cert. denied,* 354 Md. 332, 731 A.2d 440 (1999); *see Adams v. Peck,* 288 Md. 1, 4–5, 415 A.2d 292 (1980). The privilege shields the person who published the statement from liability, even if that person "knew that the statement was false, published it with malice, or acted in an otherwise unreasonable manner" and regardless of whether the defamatory statement was even relevant to the court proceedings. *Woodruff,* 125 Md.App. at 392, 725 A.2d 612. *See also Imperial v. Drapeau,* 351 Md. 38, 44, 716 A.2d 244 (1998).

As a matter of public policy, the balance is struck heavily in favor of the free disclosure of information during a judicial proceeding. In order to achieve this balance, those who participate in the judicial process must be able to do so without the specter of potential civil liability for defamation hanging over their heads.

*Imperial,* 351 Md. at 45, 716 A.2d 244.

### Scope of the Absolute Privilege in Maryland

In light of the rationale behind the rule, Maryland courts have taken a broad view of this privilege, extending it to administrative and other quasi-judicial proceedings. *Woodruff,* 125 Md.App. at 396–97, 725 A.2d 612. The privilege has been extended to an opinion prepared by a physician in connection with litigation but never introduced into evidence, *Adams v. Peck,* 288 Md. 1, 415 A.2d 292; to letters written in anticipation of litigation, *Arundel Corp. v. Green,* 75 Md.App. 77, 540 A.2d 815 (1988); to post-judgment proceedings, *Keys v. Chrysler Corp.,* 303 Md. 397, 494 A.2d 200 (1985); and even to letters written to the Governor and a member of Congress requesting an investigation; *Imperial,* 351 Md. 38, 716 A.2d 244.

*Adams* involved a letter written by a psychiatrist, Peck, on behalf of Mrs. Adams during her divorce and child custody case. Peck opined that Mr. Adams, the appellant, had abused one of the children and needed psychiatric treatment.

*Adams,* 288 Md. at 2, 415 A.2d 292. Peck sent the letter to Mrs. Adams' attorney, although it was never entered into evidence before the court. *Id.* at 3, 415 A.2d 292. Nevertheless, the Court of Appeals extended the privilege to documents that are "prepared for possible use in connection with a pending judicial proceeding but which have not been filed in that proceeding." *Id.* at 4, 415 A.2d 292.

This Court further extended the doctrine in *Arundel Corp.* In that case, a lawyer sent letters to some of Arundel's clients inquiring into problems they may have had with asbestos in Arundel's crushed stone products. The letter inquired whether any employees who worked with the product had health problems and whether Arundel had provided any precautionary instructions or warnings. *Arundel Corp.,* 75 Md.App. at 79–80, 540 A.2d 815. Arundel sued the attorney for defamation, but this Court found that, so long as the attorney could prove that the statements had "some relation to the anticipated proceeding," the privilege would attach. *Id.* at 85, 540 A.2d 815.

In *Keys,* the Court of Appeals extended the privilege to a publication by way of a writ of garnishment. The writ was filed long after the litigation that triggered it had ended. Chrysler had previously sued Keys and obtained a money judgment that was subsequently paid in full. Approximately four years after the judgment was paid, Chrysler erroneously filed a writ of garnishment against Keys and attached some of her wages. *Keys,* 303 Md. at 400–01, 494 A.2d 200. The Court of Appeals found that the absolute privilege attached because, by filing a writ of garnishment, Chrysler was in essence resuscitating the prior case. *Id.* at 405, 494 A.2d 200. The Court, in dicta, said that it would have made the same decision if Chrysler had filed a new action because any new action on the old judgment would have had enough relation to the initial judgment for the privilege to attach. *Id.* at 406, 494 A.2d 200. Because the action was related to the litigation, it was covered by the privilege.

In the most recent Court of Appeals case on this subject, the privilege was extended to letters written by a doctor, Imperial, to the Governor and a member of Congress concerning the actions of a paramedic in transporting Imperial's patient to a different hospital than he had directed. The letter also requested an investigation. *Imperial*, 351 Md. at 40–42, 716 A.2d 244. A subsequent investigation by the appropriate agency, which occurred when the Governor's office forwarded the letter to the Maryland Institute for Emergency Medical Services, cleared the paramedic, who subsequently filed a defamation suit. *Id.* at 42–43, 716 A.2d 244. The Court of Appeals found that, although the letter was not written in the context of an administrative or judicial proceeding, the privilege nevertheless attached. In disregarding the paramedic's arguments to the contrary, the Court stated: "We reject so technical a restriction on the privilege." *Id.* at 53, 716 A.2d 244.

■ The privilege is not unlimited, however, and, if a litigant publishes an otherwise privileged statement to a third party, the privilege will not attach unless "the statement [was] made to further a purpose falling within the public interest underlying the privilege, i.e., the unfettered disclosure of information needed for a judicial or quasi-judicial decision-making process." *Woodruff*, 125 Md.App. at 399, 725 A.2d 612. *Woodruff* involved a letter written by one attorney to another after a child custody hearing. The mother's attorney restated what had occurred in the hearing as well as the court's order. It also contained negative comments about the father's behavior. The mother subsequently sent a copy of the letter to the children's school principal, and the father filed suit. *Id.* at 388–89, 725 A.2d 612.

This Court held that the absolute privilege attached to the letter when it was published to the father and his attorney but not to the mother's publication to the school principal, who was not a party to the proceedings. *Id.* at 395, 725 A.2d 612. Although the Court noted that it was perfectly appropriate for the mother to notify the school of changes in the custody

arrangements, publication of the letter to the principal was unnecessary to provide notice and was therefore not entitled to absolute privilege. *Id.* at 400, 725 A.2d 612.

### The Absolute Privilege and Settlement

It has long been the policy of the Maryland courts to encourage settlement of lawsuits. *Porter Hayden Co. v. Bullinger,* 350 Md. 452, 466, 713 A.2d 962 (1998). This policy is reflected in Maryland Rule 5–408, which "prevents the admission of compromises or offers to compromise to prove the amount or validity of a civil claim." *Porter Hayden Co.,* 350 Md. at 466, 713 A.2d 962. The rule facilitates open discussion and "unfettered disclosure" without fear of reprisal. *See Adams,* 288 Md. at 5, 415 A.2d 292. Although the principle of frank discussion generally applies to both litigation and the settlement of litigation, we must nevertheless determine whether settlement discussions and a settlement agreement are so much a part of a judicial proceeding as to require the protection of an absolute privilege. In the instant case, the negotiations and the implementation of the settlement agreement took place without judicial involvement, and were not subject to court approval.

■ Neither this Court nor the Court of Appeals has had the opportunity to determine whether the absolute privilege should be extended to settlement matters. Sodergren argues that the privilege should not be extended to settlement, and contends that

the following principles appear to be utilized by the courts [of Maryland] in determining the applicability to any statement (oral or written) of the judicial proceedings privilege:

(1) the statement under consideration must arise in the context of a judicial proceeding;

(2) the statement under consideration must be related in some fashion to the free and unfettered investigation or presentation of information concerning the facts potentially or actually at issue in the litigation;

(3) there must exist some protection for the individuals who may be defamed by the statement under consideration.

Sodergren first argues that the letters in this case were "unrelated to the free and unfettered investigation or presentation of information concerning the facts potentially or actually at issue in that litigation." We disagree. As the circuit court pointed out, the concessions reflected by the letters were instrumental to resolution of the litigation. In addition, and as indicated by the circuit court, although Boord "was not a party to the Herchenroeder litigation ... [he] was closely involved. Boord was a witness to acts which form the basis of the sexual harassment claim. He was also the subject of charges of plagiarism instituted by Sodergren." In other words, the letters were written and delivered in the spirit of free and unfettered investigation or presentation of information concerning facts " 'having relation to the cause or subject matter' " of the litigation. *Woodruff*, 125 Md.App. at 393, 725 A.2d 612 (quoting *Dixon v. DeLance*, 84 Md.App. 441, 449, 579 A.2d 1213 (1990), *cert. denied*, 321 Md. 501, 583 A.2d 275 (1991) (quoting *Maulsby v. Reifsnider*, 69 Md. 143, 162 14 A. 505 (1888))); *Imperial*, 351 Md. at 44, 716 A.2d 244. An allegation of Herchenroeder's complaint was that the plagiarism charges were brought when she rebuffed Sodergren's advances.

■ With respect to the issue of procedural safeguards, Sodergren cites *Gersh v. Ambrose*, 291 Md. 188, 434 A.2d 547 (1981), in arguing that there were no procedural safeguards in place during settlement to protect Sodergren from defamation. *Gersh* requires courts to look at two factors before extending the absolute privilege to an administrative proceeding: "(1) the nature of the public function of the proceeding and (2) the adequacy of procedural safeguards which will minimize the occurrence of defamatory statements." *Gersh*, 291 Md. at 197, 434 A.2d 547.

The circuit court said, "the *Gersh* factors specifically deal with the types of proceedings covered by the privilege, not the scope of the privilege within a given proceeding." We agree.

The *Gersh* Court was concerned with the application of the privilege to administrative proceedings, which can run the gamut from a quasi-judicial proceeding with all of its safeguards to an open public hearing where anyone can stand up and make comments. *Gersh*, 291 Md. at 196, 434 A.2d 547.

In *Odyniec v. Schneider*, 322 Md. 520, 588 A.2d 786 (1991), the Court of Appeals concluded that previous cases, including *Gersh*, stand for the proposition that absolute witness immunity will not apply in a nonjudicial proceeding unless the same policy considerations underlying the application of the privilege in the judicial sphere are also present. "It must appear from the nature and conduct of the proceedings that society's benefit from unfettered speech during the proceeding is greater than the interests of the individuals who might be defamed. . . ." *Id.* at 531, 588 A.2d 786.

Although *Woodruff* cited *Gersh* and other administrative cases, the Court made clear that the need for procedural safeguards "comes into play largely as part of the determination of whether the allegedly defamatory statement was made in a judicial or quasi-judicial proceeding." *Woodruff*, 125 Md.App. at 399, 725 A.2d 612. The *Woodruff* Court found there to be no meaningful procedural safeguards available when a letter between counsel was published to a school principal. The court said:

> In providing the school principal with the letter, Mrs. Woodruff did not report information that the school has the authority to adjudicate. The school is not a tribunal and is not engaged in a judicial or quasi-judicial role. The school is not even the appropriate entity for Mrs. Woodruff to report allegations of physical child abuse occurring outside of the school.

*Woodruff*, 125 Md.App. at 399, 725 A.2d 612.

■ We agree with the circuit court that the safeguards referred to in *Gersh* and its progeny concern the type of proceeding involved. Here, a judicial proceeding is involved. Generally, judicial proceedings are deemed to contain inherent safeguards against abuse of the privilege. In determining

whether the privilege should extend to the settlement of a judicial proceeding, the question becomes whether the nexus between litigation and its settlement furthers a purpose, i.e., the unfettered disclosing of information needed for a judicial or quasi-judicial decision-making process.

The Supreme Court of Utah has held that settlement is a part of a judicial proceeding and a letter concerning settlement negotiations that made derogatory comments about one party's attorney was therefore subject to absolute privilege. *Price v. Armour,* 949 P.2d 1251, 1253 (Utah 1997). The rationale of the *Price* Court was that the letter satisfied the three requirements necessary in Utah to qualify for an absolute privilege: (1) it was made during the course of an administrative proceeding before the National Labor Relations Board, which was effectively a judicial proceeding; (2) the letter was in reference to the subject matter of the proceeding; and (3) the letter was written by "someone acting in the capacity of judge, juror, witness, litigant, or counsel." *Price,* 949 P.2d at 1257–58 (citing *Allen v. Ortez,* 802 P.2d 1307, 1313 (Utah 1990) (setting forth the three-pronged test to determine if alleged defamatory statements are subject to the absolute privilege). We find this analysis instructive.

As Sodergren acknowledged in his brief, the settlement agreement took place in the context of a judicial proceeding. The complained-of letters were written by one of the defendants to the plaintiff and also to a potential plaintiff, who was a likely witness in this case. The subject matter of the letters related to both the subject matter of Herchenroeder's current claim and a potential claim of Boord,[6] who had also been accused of plagiarism by Sodergren.

The New Mexico Court of Appeals also provides guidance in *Romero v. Prince,* 85 N.M. 474, 513 P.2d 717 (N.M.Ct.App.

---

6. Boord signed a general release as part of the settlement, which indicates that Boord was considering filing suit against APL. The release apparently concerned something other than plagiarism charges, although we cannot be sure because we are not privy to the "Constantine Notes" that are the subject of the release.

1973). *Romero* concerned an argument over a tract of land known as La Elfega. Lucy Romero, the administratrix of her parents' estate, claimed that the estate owned La Elfega. Her brother, Albert Martinez, also claimed ownership. Romero brought suit and, while it was pending, entered into a lease with a third party, Feliberto Maestas. When Maestas became aware of Martinez's potential claim to the land, he spoke with Martinez's attorney, Mr. Prince. Prince subsequently wrote a letter containing allegedly defamatory statements about Romero. Maestas was provided with a copy of the letter, and that publication gave rise to the suit. *Romero,* 85 N.M. at 475–76, 513 P.2d 717.

The *Romero* Court said: "If the alleged defamatory statement is made to achieve the objects of the litigation, the absolute privilege applies even though the statement is made outside the courtroom and no function of the court or its officers is invoked." *Romero,* 85 N.M. at 477, 513 P.2d 717. The Court noted that Maestas was directly affected by the lawsuit because he had a financial stake in La Elfega, and that the letter was "reasonably related" to the lawsuit in that it concerned Martinez's alleged rights in the property. *Id.* As in Maryland, *Imperial,* 351 Md. at 44, 716 A.2d 244, the statement did not need to be "relevant" to the subject matter of the suit. *Romero,* 85 N.M. at 477, 513 P.2d 717.

Sodergren attempts to distinguish these cases by pointing out that they involved an attempted settlement of a claim rather than, as in this case, actual settlement. In his brief he states:

None of the cases deal with the language included in the actual settlement documents resulting from the attempts to settle, which documents themselves terminate the litigation process. The acts of attempting to settle were viewed as part of the judicial proceedings because the negotiations were still part of the process whereby facts relating to the case were exchanged. Because there still exists a search for the truth during the stage where a settlement is merely being negotiated, the public interest in allowing the free flow of information between the parties is still served.

Furthermore, a party who believes he has been defamed in the course of settlement negotiations is free to decline to settle, and put the truth of the defamatory statements to the test of trial.

In the context of the privilege and the policies supporting it, this appears to be a meaningless distinction. The fact that a settlement agreement terminates litigation suggests that the settlement negotiations and the ultimate settlement cannot be removed from the judicial proceedings the parties have agreed to end. A settlement agreement is the culmination of successful settlement negotiations. We see no reason to extend the protection of the privilege to someone during settlement negotiations and then to expose them to litigation once the settlement is negotiated. To hold that a privilege applicable to settlement negotiations does not extend to the subsequent agreement memorializing those negotiations would be illogical.

In fact, all of the state courts that have expressly addressed the issue of the absolute privilege in the settlement context have found that it applies. *See O'Neil v. Cunningham,* 118 Cal.App.3d 466, 173 Cal.Rptr. 422 (Cal.Ct.App.1981) (an attorney's allegedly defamatory statement against his client, made in a settlement letter, were protected by the privilege) (citing Cal. Civ.Code § 47); *Milavetz, Gallop & Milavetz, P.A. v. Hill,* 1998 WL 422229, 1998 Minn.App. LEXIS 860 (Minn.Ct. App.1998) (appellee Hill's statements, made in order to settle a sexual harassment case, were subject to the absolute privilege); *Pape v. Reither,* 918 S.W.2d 376 (Mo.Ct.App.1996) (letters labeled "for settlement purposes only," written in response to nonperformance of settlement agreement, was subject to privilege because it was an opinion made in connection with a lawsuit); *Ruberton v. Gabage,* 280 N.J.Super. 125, 654 A.2d 1002 (N.J.Super.Ct.App.Div.1995) (threat to file criminal charges during settlement conference is protected by privilege because settlement conference is "unquestionably" part of judicial proceedings); *Romero,* 85 N.M. 474, 513 P.2d 717; *Vodopia v. Ziff–Davis Pub. Co.,* 243 A.D.2d 368, 663 N.Y.S.2d 178 (N.Y.App.Div.1997) (defamation action premised on letter written by opposing counsel during settlement nego-

tiations of copyright suit properly dismissed, because the letter was covered by the absolute privilege); *Chard v. Galton,* 277 Or. 109, 559 P.2d 1280 (Or.1977) (letter written in attempt to settle case without filing suit covered by absolute privilege) (citing *Zirn v. Cullom,* 187 Misc. 241, 63 N.Y.S.2d 439, 440–41 (1946)); *Bennett v. Computers Assocs. Int'l,* 932 S.W.2d 197 (Tex.Ct.App.1996) (comments made during settlement discussion by appellee's president calling appellant a "thief" and a "crook" were absolutely privileged) (citing *Chard, supra*); and *Price,* 949 P.2d 1251. We have only been able to locate one case, in Florida, where the court has suggested, although it specifically did not decide the issue, that settlement activities would be covered by a qualified, rather than an absolute, privilege. *Silver v. Levinson,* 648 So.2d 240, 244 (Fla.Ct.App. 1994).

■ Sodergren also contends that the "trial court erred in relying on *Romero* to find that the distribution to Boord, an uninterested, nonparty witness, was privileged." The circuit court said:

> As in *Romero v. Prince,* the defamatory statements of APL were published to an individual, Boord, who was not a party to the Herchenroeder litigation but who was closely involved. Boord was a witness to acts which form the basis of the sexual harassment claims. He was also the subject of charges of plagiarism instituted by Sodergren. And unlike the republication to the school in *Woodruff v. Trepel,* **the letter to Boord was published in the "course of a judicial proceeding" in that it was required by and incorporated by the settlement agreement.**

(Emphasis supplied). We agree with the circuit court's assessment of the letter to Boord. Even though he was not a party, Boord was involved in the litigation. He, like Herchenroeder, was subject to Sodergren's plagiarism charges and seemed to have been considering filing a complaint against APL in a matter related to Herchenroeder's case if not necessarily relating to the plagiarism charges. He executed a release relieving both APL and Sodergren of liability. In

*Arundel Corp.,* the exclusive privilege was extended to prelitigation activities. It should also apply to settlement activities that seek to avoid additional litigation.

Moreover, Herchenroeder insisted on the letter to Boord as part of her settlement agreement. Boord was an interested party because Herchenroeder made him an interested party. Because it was apparently important enough to Herchenroeder that a letter to Boord be a settlement requirement, that letter was covered by the privilege.

In conclusion, we hold that there is a sufficient nexus between a judicial proceeding and the settlement of that proceeding, including the negotiations leading to that settlement, the settlement agreement, and the implementation of that settlement agreement, to extend the exclusive privilege to the statements made by APL regarding appellant and published to Herchenroeder and Boord. The facts of this case do not require us to reach the issue of publication to a third person not directly involved in the case.[7]

Sodergren raises two additional errors, which we now address in turn.

### *Affording a Privilege Violates Public Policy*

■ Sodergren argues that allowing the letters to be covered by the absolute privilege violates Maryland public policy as found in Md.Code Ann. (1973, 1998 Repl.Vol.), § 5–423 of the Courts and Judicial Proceedings Article:

(a) Liability of employer.—An employer acting in good faith may not be held liable for disclosing any information about the job performance or the reason for termination of employment of an employee or former employee of the employer:

---

7. There was no evidence in this case that either Herchenroeder or Boord published the letters to any third parties even though the agreement expressly allowed Herchenroeder to "disseminate Exhibits A–1 through A–6 as she sees fit." This does not change our analysis here, because Sodergren only complains about the publication of the letter to Boord.

(1) To a prospective employer of the employee or former employee at the request of the prospective employer, the employee, or former employee; or

(2) If requested or required by a federal, State, or industry regulatory authority or if the information is disclosed in a report, filing, or other document required by law, rule, order, or regulation of the regulatory authority.

(b) Presumption of good faith; exceptions.—An employer who discloses information under subsection (a) of this section shall be presumed to be acting in good faith unless it is shown by clear and convincing evidence that the employer:

(1) Acted with actual malice toward the employee or former employee; or

(2) Intentionally or recklessly disclosed false information about the employee or former employee.

Sodergren admits in his brief that "disclosure of information about an employee in the context of the settlement of a lawsuit is not specifically mentioned by the statute." But he argues that, nevertheless, "there is an obvious public policy in Maryland to protect both the employer and the employee with regard to an employer's disclosures about an employee."

It is evident from the plain language of the statute that it provides an employer with a qualified privilege to make statements about a current or former employee only when discussing the employee's job performance or the reason for termination. *See also Darvish v. Gohari*, 130 Md.App. 265, 274–75, 745 A.2d 1134 (2000), *aff'd*, 363 Md. 42, 767 A.2d 321 (2001) (finding that the statute did not cover defamatory statements made about a former employee to a potential franchisor of that employee). This statute is worded very narrowly, it is clear on its face, and it does not denote an "obvious public policy" to protect employees from all disclosures made by an employer.

Furthermore, Sodergren provides us with no authority other than the statute itself in making his sweeping argument for this broad interpretation. As we recently stated in *Electronics Store, Inc. v. Cellco Partnership.*, "it is not this Court's

responsibility to attempt to fashion coherent legal theories to support appellant's sweeping claims." 127 Md.App. 385, 405, 732 A.2d 980, *cert. denied,* 356 Md. 495, 740 A.2d 613 (1999) (noting that appellant "devotes only nine lines to [two of the counts in the brief], citing no law and only one record citation). It "is not our function to seek out the law in support of a party's appellate contentions. Accordingly, we shall not address the potential merits of [the argument]." *Anderson v. Litzenberg,* 115 Md.App. 549, 578, 694 A.2d 150 (1997); *see also Oroian v. Allstate Ins. Co.,* 62 Md.App. 654, 658, 490 A.2d 1321 (1985) (argument deemed waived because appellants cited no authority in their brief to support their position).

We hold that the circuit court's finding of an absolute privilege in this case does not violate Maryland public policy or § 5–423 of the Courts and Judicial Proceedings Article.

### APL's Alleged Waiver of the Privilege

Sodergren's last argument is that APL waived the absolute privilege in paragraphs 9(b) and 19 of the settlement agreement, which have been set forth in the facts. That argument may have merit, but, as appellees point out, Sodergren raises this issue for the first time on appeal. We have conducted a review of the record, and we have found no mention whatsoever of waiver during the proceedings of this case. This argument is therefore not preserved for appeal.

In reaching the conclusion that these claims are not preserved, we are guided by *Guerassio v. American Bankers Corp.,* 236 Md. 500, 204 A.2d 568 (1964). There, the appellants sought to overturn the trial court's decision to grant summary judgment in favor of the appellee. To support their cause, the appellants argued, for the first time on appeal, that the affidavit in support of the appellee's motion was defective. *Id.* at 504–05, 204 A.2d 568. The Court of Appeals declined to consider that contention. It stated:

Appellants were required to raise whatever issues they desired to interpose to the motion at or before the time of hearing in the trial court by affidavit or deposition.... At

any rate this question can not now be raised.... Appellants may not overturn a summary judgment by raising here an issue that was not plainly disclosed as a genuine issue in the trial court.

*Id.* at 505, 204 A.2d 568 (internal citations omitted)(emphasis added). *See also Fishman Const. Co. v. Hansen,* 238 Md. 418, 424, 209 A.2d 605 (1965) (holding that appellant's challenge to the form of the supporting affidavit could not be presented for the first time on appeal).

What we said in *Gittin v. Haught–Bingham, supra,* 123 Md.App. [44] at 51, 716 A.2d 1063 [(1998) ] mirrors our position here:

Whatever limited discretion an appellate court may have to consider unpreserved issues pursuant to Md. Rule 8–131(a) such discretion should be exercised only in extraordinary circumstances and within the bounds of fairness to both parties and to the court, not just to the party seeking the exercise of that discretion. We are not persuaded that the circumstances and facts of this case require a departure from established precedent.

*Faith v. Keefer,* 127 Md.App. 706, 737–38, 736 A.2d 422, *cert. denied,* 357 Md. 191, 742 A.2d 521 (1999).

### Appellees' Alternative Arguments

Appellees raised a number of arguments for us to consider in the event we decided that the absolute privilege did not attach to the letters in this case. These arguments revolve around Sodergren's failure to prove all of the elements of the claims he raised in his complaint and were raised at the time of summary judgment. In view of our decision on the issue of absolute privilege, we need not address these alternative arguments. Moreover, as Sodergren pointed out, it would be inappropriate to engage in a discussion of these arguments, because the circuit court did not base its decision on any of those grounds. *Bishop v. State Farm Mutual Auto Ins.,* 360 Md. 225, 234, 757 A.2d 783 (2000).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.