989 A.2d 1239

**Linda BENWAY, Individually Etc.**

v.

**MARYLAND PORT ADMINISTRATION et al.**

No. 2260, Sept. Term, 2008.

Court of Special Appeals of Maryland.

March 1, 2010.

Linda Benway, pro se appellant, Baltimore.

Peter Engel, Towson, for appellee.

Panel: DAVIS, ZARNOCH, J. FREDERICK SHARER, (Retired, Specially Assigned), JJ.

DAVIS, J.

Linda Benway, appellant, filed a claim with the Workers' Compensation Commission of Maryland (Commission) seeking death benefits from appellees, the Maryland Port Administration and the Injured Workers' Insurance Fund, as a result of the death of her husband, Robert L. Benway, Jr. A hearing on appellant's claim was held on March 6, 2008. The Commission disallowed her claim on March 21, 2008. Appellant, acting *pro se,* filed a Petition for Judicial Review of the Commission's decision in the Circuit Court for Baltimore City on April 14, 2008. On April 29, 2008, a Pre–Trial Scheduling Order was issued which required, *inter alia,* that "[a]ny motion for summary judgment shall be filed no later than 5 months from the date of this order—09/28/08." Trial was set for December 2, 2008. Over a month after the deadline for dispositive motions, on October 31, 2008, appellees filed a Motion for Summary Judgment. Appellant filed a response on November 19, 2008. The court granted summary judgment in appellees' favor on November 25, 2008. Appellant filed a Motion for Reconsideration on December 1, 2008 and, while the court's disposition of that Motion was pending, appellant filed a Notice of Appeal. Ultimately, the circuit court denied appellant's Motion for Reconsideration.

Appellant presents three questions [1] for our review, which we have rephrased and consolidated into the following two questions:

I. Did the circuit court err in considering a summary judgment motion filed after the scheduling order deadline?

---

**1.** The issues, as presented by appellant, are as follows:

I. The Circuit Court erred [sic] to notice that Appellee's [sic] motion for Summary Judgment was filed 30 days late pursuant to MD Rule 2504(a).

II. The Circuit Court erred when it failed to rule on Appellant's opposition motion to overturn Appellee's [sic] motion for Summary Judgment.

III. [The Circuit Court] granted Summary Judgment to Employer/Insurer based on the testimony of the Workers' Compensation Commission Hearing transcript, dated, March 6, 2008.

II.  Did the circuit court err in granting summary judgment in favor of appellees?

For the reasons that follow, we answer both of appellant's questions in the negative.  Accordingly, we affirm the decision of the Circuit Court for Baltimore City.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant's husband, Robert L. Benway, Jr. (Benway), was employed by appellee, the Maryland Port Administration, as a Facility Maintenance Supervisor.  As a Facility Maintenance Supervisor, he was responsible for all underground utilities, in addition to general maintenance duties.  Benway supervised several employees, including Patrick Woods and Keith Capps.

On the morning of June 26, 2006, Benway, Woods and Capps were at a Maryland Port Administration property located at South Clinton Street (the Property) in Baltimore, Maryland.  At some point around 10:00 a.m., while ascending or descending a ladder, Benway's legs became entangled, causing the ladder to slip and Benway to fall eight to twelve feet.  His head struck the cement and he sustained severe injuries.  Woods immediately took Benway to Johns Hopkins Bay View Hospital, where he died on July 1, 2006, as a result of his injuries.

On October 26, 2006, appellant filed a death benefits claim with the Workers' Compensation Commission.  She asserted that Benway was killed in a work-related accident when he "fell from a ladder, struck [his] head and died from said injuries."  Appellees contested the claim based, in part, on their assertion that Benway's death resulted from injuries sustained while he was deviating from his employment.  Specifically, appellees claimed that, at the time of his injuries, Benway, with the help of Woods and Capps, was attempting to steal copper wiring from the ceiling of the Property to sell for scrap metal.[2]  On March 6, 2008, the Commission held a

---

2.  Woods and Capps, after initially telling police that they were at the Property to salvage parts from a valve compressor to be used at another

hearing on the matter.[3]

Prior to offering testimony, appellant's attorney objected to any testimony based on out of court statements that Patrick Woods and Keith Capps made to police regarding the incident, arguing that such statements were inadmissible hearsay. Appellees' attorney responded that the police reports would be admissible under the public records exception to the hearsay rule, *see* Rule 8–503(b)(8), and that any statements from Woods or Capps in that report would be admissible as statements against interest of an unavailable declarant under Rule 5–804(b)(3), as Woods had been subpoenaed but failed to appear and Capps planned to invoke his Fifth Amendment privilege. The Commissioner sustained the objections, pending whether Capps, in fact, invoked his Fifth Amendment privilege. Thereafter, appellant's counsel indicated that they had no witnesses to testify and appellees called their first witness.

Richard E. Rehberger, on behalf of appellees, was the first witness called. Rehberger was the General Manager of Facility Maintenance for the Maryland Port Administration at the time of Benway's accident. He testified that Benway was a Facility Maintenance Supervisor, whose direct supervisor was Joseph Nickoles. Woods was under the supervision of Benway, he explained, and Capps was under the supervision of Woods. Rehberger stated that he was made aware of the fall shortly after it occurred and that it transpired on Administration property. He further testified, however, that the Property was in "inactive" status at the time of Benway's injuries and there was no reason for Benway to be there. Appellant's counsel declined to cross-examine Rehberger.

Appellees then called Joseph Nickoles, Assistant General Manager of Facility Maintenance, to the stand. He likewise

---

Port Administration location, recanted and admitted to police that they, along with Benway, were attempting to cut copper wiring out of the ceiling in order to sell it as scrap metal.

**3.** The record reflects that, due to requested continuances from both parties, this hearing was delayed on numerous occasions.

testified that, at the time of Benway's injuries, he was Benway's supervisor and the property where Benway was injured was on inactive status. He stated that there was no work order, nor any work scheduled, which would require Benway to be at the Property with Woods and Capps. He said that he was unaware of any legitimate business reason for them to be there. Again, appellant's counsel declined to cross—examine the witness.

Appellees called Keith Capps to testify next. Capps was present at the hearing with his own attorney, who advised him to assert his Fifth Amendment privilege. Appellees argued that, because Capps had already pleaded guilty to crimes relating to the incident, he could not invoke this privilege. Capps' attorney explained that, due to appellant's insinuations to the police and newspapers of other wrongdoing by Capps, arising out of Benway's fall, he advised his client not to answer any questions regarding the incident. As a result, when appellees' attorney asked Capps any questions, he responded, "I respectfully reserve [sic] to answer to the ground that it may tend to incriminate me."

Having found that Capps' assertion of his Fifth Amendment privilege rendered him unavailable as a witness, *see* Rule 5–804(a)(1), the court permitted appellees to call to the stand to testify regarding Capps' statements to police Nicholas A. Mize, a former detective for the Maryland Transportation Authority Police Department who investigated Benway's accident. Detective Mize testified that he was assigned to investigate Benway's death and, in the course of that investigation, he spoke to both Woods and Capps on several occasions. Appellant objected on the grounds of hearsay and the commissioner overruled his objection with respect to Capps' statements.

Mize recounted that, in his interviews with Woods and Capps, he attempted "to determine the exact cause, manner or circumstances surrounding the death of Mr. Robert Benway." He related that, at a certain point during his investigation, he suspected that Woods and Capps were involved in the theft of

property from the facility. He stated that Capps initially told him that he and Woods stopped at Royal Farms for a Gatorade and a coffee on the morning of June 26, 2008, then proceeded to the Property to scavenge for parts in the valve house to be used for a compressor at a site that is currently active. Capps told Mize that, while he was attempting to remove the parts, Benway stopped by to check on their progress. Capps continued, recalling to Mize that, as Benway was descending the ladder after a brief conversation with Capps, he fell and struck his head on the cement floor.

Mize explained that, after his initial interview, he questioned Capps again, this time after reading him *Miranda* rights. During the second interview, Capps' version of the events was identical to the initial interview. The third time they spoke, however, Capps related a very different story.

Mize testified that, during the third interview, he once again advised Capps of his *Miranda* rights. Confronted with pictures of copper wires in the ceiling which had been cut, Capps told Mize that he, Woods and Benway were attempting to take the copper wiring from the Property to sell as scrap metal for extra money. Mize recalled that Capps described how they placed a ladder into the conduit box and how Benway stood atop the ladder, cut the wires and attempted to pull them free. At some point, Benway's legs became entangled in the ladder, it fell and Benway's head struck the floor. When Woods took Benway to the hospital, Capps told Mize, he remained behind to stage the scene as if they were scavenging for parts by moving a ladder to the valve house and partly dissembling a compressor unit. Mize testified that Capps told him he initially lied because they were "trying to protect Benway's good name." The Commissioner did not allow appellees' counsel to question Mize with regard to Woods' statements because Woods was not an unavailable witness. Once again, appellant did not undertake any cross-examination.

On March 21, 2008, the Commission issued a brief decision, which we will provide in its entirety:

Hearing was held in the above claim at Abingdon, Maryland on March 6, 2008, on the following issues:

1. Did the employee sustain an accidental personal injury arising out of and in the course of employments?
2. Is the disability of the employee the result of accidental personal injury arising out of and in the course of employment?

The Commission finds on the first issue that the claimant did not sustain an accidental injury arising out of and in the course of employment as alleged to have occurred on June 26, 2006. Deceased was engaged in activity deviating from his employment responsibilities which led to his tragic fall and subsequent death. His unfortunate, wilful misconduct was the sole cause of this accident. Therefore, the second issue is not applicable, and the Commission will disallow the claim filed herein.

It is, therefore, this 21st day of March, 2008, by the Workers' Compensation Commission ORDERED that the claim filed in the above case by above-named claimant, against the above-named employer and the above-named insurer, be and the same, is hereby disallowed.

Thereafter, on April 14, 2008, appellant filed a Petition for Judicial Review in the Circuit Court for Baltimore City and requested a jury trial. On April 28, 2008, appellees filed a Response to Petition, indicating their intention to participate. The very next day, the circuit court issued a Pre–Trial Scheduling Order to all parties of record, which stated, *inter alia*, "Any motion for summary judgment shall be filed no later than five months from the date of this order–09/28/08." A trial date of December 2, 2008 was scheduled.

Appellees designated their expert witnesses on October 22, 2008. Then, over a month after the deadline set forth in the Scheduling Order, appellees filed a Motion for Summary Judgment on October 31, 2008. Appellees averred that there was no genuine dispute as to any of the material facts. They contended that the uncontradicted testimony from witnesses to the accident was that Benway was engaged in acts that

were not part of his employment at the time of the alleged incident, was not in an authorized location and was guilty of willful misconduct and deviation from employment. Additionally, testimony from "investigative authorities established, without contradiction, that [Benway], along with others, was performing an illegal and/or prohibited and unauthorized act at the time of the alleged accident." The Motion for Summary Judgment incorporated by reference the testimony from the Workers' Compensation Commission hearing.

On November 19, 2008, appellant filed a Declaration in Opposition to the Motion for Summary Judgment. The Declaration, which was in the form of an affidavit, stated that appellant "oppose[s] [appellees'] Motion for Summary Judgment because I disagree with [appellees'] claim as to how the accident occurred." Appellant argued that "[y]ou can't go by sworn testimony when all testimonial statements are all conflicting." She contended that Benway was at work at 9:45 a.m., he had permission to be at the Property to check on his employees and there was no evidence that he was guilty of willful misconduct. Finally, she asserted that, "[y]ou can't believe any testimony sworn or unsworn from [appellees'] witnesses and I believe I can prove that their statements are false."

On November 25, 2008, the circuit court, "[u]pon consideration of Employer and Insurer's Motion for Summary Judgment and Appellant's response thereto, good cause having been shown for the relief prayed," granted summary judgment in favor of appellees. Appellant filed a Motion for Reconsideration on December 1, 2008. In that motion, she argued that the deadline to file a motion for summary judgment, according to the Scheduling Order was September 28, 2008. She pointed out that appellees filed their Motion for Summary Judgment on October 31, 2008.[4] She asked that the court reconsider her Declaration in Opposition, stating "[m]y Declaration and [appellees'] Motion for Summary Judgment were filed the

---

4. Appellant erroneously states that the Motion was filed on October 29, 2008.

same day and therefore you did not get the chance to review it." [5]

While the court's decision on this Motion was pending, appellant filed a Notice of Appeal to this Court on December 8, 2008. Subsequently, the circuit court denied her Motion for Reconsideration.

Additional facts will be provided *infra* as warranted.

## LEGAL ANALYSIS

### I

Appellant's initial assignment of error is that the circuit court should not have permitted appellees to file a motion for summary judgment after the deadline set forth in the court's Scheduling Order. As indicated above, the Scheduling Order required all motions for summary judgment to be filed by September 28, 2008; however, appellees filed their motion on October 31, 2008. Appellant's argument regarding this issue, in its entirety, is:

> Section 2–504 (a) Scheduling Order; Pre–Trial Conference of Maryland Annotated Code sets forth the deadline for filing a Summary Judgment motion. A Summary Judgment motion must be filed no later than 5 months from the date of [sic] order. Appellee [sic] filed the Summary Judgment motion late.

■ Appellant's argument is problematic in at least two significant respects. First, appellant's argument misstates the law. Md. Rule 2–504(a) [6] does not set forth a deadline for filing a summary judgment motion and does not mandate that a summary judgment motion be filed no later than five months from the date that the scheduling order was issued. Rule 2–

---

**5.** The record reflects that these motions were not filed on the same day. Instead, appellees' Motion was filed on October 31, 2008 and appellant's Declaration was filed on November 19, 2008.

**6.** All references to a "Rule" hereinafter will be referring to the Maryland Rules.

504(a) merely provides that a court, unless otherwise ordered by the County Administrative Judge, "shall enter a scheduling order in every civil action." It was the circuit court's Scheduling Order, issued pursuant to Rule 2–504, which set forth those deadlines. Second, appellant fails to cite any legal authority in support of her proposition. Appellant does not direct us to any case, statute or rule which provides that a court cannot entertain such a motion past the date stated in the scheduling order. It is well settled that it "is not our function to seek out the law in support of a party's appellate contentions." *Diallo v. State,* 186 Md.App. 22, 33, 972 A.2d 917 (2009); *Higginbotham v. Pub. Serv. Comm'n of Maryland,* 171 Md.App. 254, 268, 909 A.2d 1087 (2006); *Collins v. Collins,* 144 Md.App. 395, 438, 798 A.2d 1155 (2002); *Judd Fire Prot., Inc. v. Davidson,* 138 Md.App. 654, 670, 773 A.2d 573 (2001); *Sodergren v. Johns Hopkins Univ. Applied Physics Lab.,* 138 Md.App. 686, 707, 773 A.2d 592 (2001); *Kline v. Knight,* 135 Md.App. 732 (2000); *Anderson v. Litzenberg,* 115 Md.App. 549, 578, 694 A.2d 150 (1997); *see also Oroian v. Allstate Ins. Co.,* 62 Md.App. 654, 658, 490 A.2d 1321 (1985), *von Lusch v. State,* 31 Md.App. 271, 282, 356 A.2d 277 (1976), *rev'd on other grounds,* 279 Md. 255, 368 A.2d 468 (1977). Accordingly, we are not obliged to consider appellant's arguments. Nonetheless, in the exercise of our discretion, we shall consider this issue.

Appellees counter by asserting that neither Rule 2–501, regarding motions for summary judgment, nor Rule 2–311, regarding motions generally, "provides any deadline for the filing of such a motion." Appellees argue that a "Motion for Summary Judgment may be made by any party at any time that it appears there is not [sic] genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." In support of this proposition, appellees cite several older cases, namely, *Myers v. Montgomery Ward & Co.,* 253 Md. 282, 252 A.2d 855 (1969), *Placido v. Citizens Bank & Trust Co.,* 38 Md.App. 33, 379 A.2d 773 (1977) and *Baker, Watts & Co. v. Miles & Stockbridge,* 95 Md.App. 145, 620 A.2d 356 (1993).

Appellees fail to note that these cases were decided prior to the adoption of Rule 2-504, which requires that a scheduling order set forth a deadline for the filing of all dispositive motions. Rule 2-504(b)(1)(E). Additionally, these cases were decided under the predecessor to Rule 2-501, *i.e.*, Rule 610 a, which expressly stated that a motion for summary judgment could be filed "at any time." Thus, the ability to file a motion for summary judgment at any time, when those cases were decided, was allowed specifically by Rule. By contrast, the current version of Rule 2-501, under which this case was decided, does not contain the phrase, "file at any time," due to amendments to the Rule in 2004. Thus, cases decided under the previous language are not authority that a party presently may file a motion for summary judgment at any time.

██ We must determine, then, whether the current version of Rule 2-501 continues to permit a party to file a motion for summary judgment at any time. The language of Rules 2-501 and 2-504, considered in conjunction with the minutes of the Court of Appeals Standing Committee on Rules and Procedure (the Rules Committee) discussing the amendments, would suggest that such a motion must be filed in accordance with the Scheduling Order. As we shall discuss, however, notwithstanding the language and history of the amendments, the Court of Appeals' addition of a Committee Note following its adoption of the amended version of Rule 2-501 and its decision in *Rodriguez v. Clarke*, 400 Md. 39, 926 A.2d 736 (2007), provide that appellees were entitled to file their motion for summary judgment at any time.

Rule 2-501 currently states, in pertinent part,

(a) Motion.—Any party may make a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. The motion shall be supported by affidavit if it is (1) filed before the day on which the adverse party's initial pleading or motion is filed or (2) based on facts not contained in the record.

. . . .

It omits the phrase "at any time," suggesting that a party cannot file a motion for summary judgment at any time, but instead can file a motion for summary judgment after the deadline only with good cause. *See, e.g., Faith v. Keefer*, 127 Md.App. 706, 733, 736 A.2d 422 (1999). This interpretation is supported by the minutes of the Rules Committee meetings following the Court of Appeals' decisions in *Pittman v. Atlantic Realty Co.*, 359 Md. 513, 754 A.2d 1030 (2000) and *Beyer v. Morgan State Univ.*, 369 Md. 335, 800 A.2d 707 (2002), which dealt with procedural issues surrounding the grant of a motion for summary judgment. These cases were the impetus for the Rules Committee's decision to undertake amendments to these Rules in order to clarify their operation. A brief survey of Court of Appeals' decisions in *Pittman* and *Beyer* is informative for our discussion.

In *Pittman*, in response to defendants' motions for summary judgment, the plaintiff submitted an affidavit which contradicted her deposition testimony and provided her expert with a sufficient basis with which he could state, *via* affidavit, that the premises were a substantial factor in his son's injuries. 359 Md. at 523–25, 754 A.2d 1030. This affidavit was filed after the deadline for motions for summary judgment set forth in the court's scheduling order. *Id.* at 523, 754 A.2d 1030. The circuit court struck the affidavits as contradictory to the depositions of the mother and expert. *Id.* at 524–25, 754 A.2d 1030. The court then entered summary judgment in favor of the defendants. *Id.* We affirmed the grant of summary judgment and, in so doing, adopted the sham affidavit rule. *Id.* at 525–26, 754 A.2d 1030.

The Court of Appeals reversed and, prior to holding that the sham affidavit rule was inconsistent with Maryland law, addressed the defendants' contention that the plaintiff could not file affidavits to be included with her opposition to the motion for summary judgment that violated the scheduling order deadlines. *Id.* at 533–34, 754 A.2d 1030. The Court stated:

Before addressing the sham affidavit issue, we address Respondents' argument that Petitioners violated the scheduling order and its discovery cutoff by altering their position from that stated in discovery when they were faced with a motion for summary judgment. Here, as provided under Maryland Rule 2–504, the scheduling order fixed "a date by which all dispositive motions must be filed," Rule 2–504(b)(1)(E), and that date was after the date "by which all discovery must be completed." Rule 2–504(b)(1)(D). Rule 2–504's sequencing contemplates that the facts will be developed during discovery and that, based on that discovery record, the court will be able to determine whether a trial is necessary if a party seeks summary judgment. The summary judgment rule, however, expressly authorizes the filing of an affidavit in opposition to a motion for summary judgment. Rule 2–501(b). Rule 2–504 does not, and the scheduling order in this case could not, deprive Petitioners of that right under Rule 2–501(b). Consequently, if an affidavit in opposition to a motion for summary judgment may be stricken on the ground that its factual content contradicts the affiant's deposition testimony, a court's authorization to do so seemingly must be found under Rule 2–501.

*Id.* (footnote omitted).

Two years later, in *Beyer v. Morgan State Univ.,* 369 Md. 335, 800 A.2d 707 (2002), the defendant filed an oral motion for summary judgment on the day of a hearing of an appeal from the Orphans' Court which had allowed the plaintiff, Beyer, to make payments to an attorney from her late sister's trust, over the objection of Morgan State, a co-beneficiary. *Id.* at 345–46, 800 A.2d 707. The circuit court granted defendant's motion, noting "motions for summary judgment can be filed at any time in a proceeding, and it can even be done orally." *Id.* Beyer appealed to this Court. *See Beyer v. Morgan State Univ.,* 139 Md.App. 609, 779 A.2d 388 (2001). We concluded that there was no genuine dispute of material facts, *id.* at 636–39, 779 A.2d 388, but held that the circuit court failed to make appropriate evidentiary findings as to whether Beyer's pay-

ments were extraordinary expenses which could be paid from the estate. *Id.* at 641, 779 A.2d 388. We affirmed, in a part, and reversed, in part, and remanded for reconsideration of the legitimacy of expenses approved by the Orphans' Court. *Id.* at 641, 779 A.2d 388.

The Court of Appeals granted *certiorari*, and among the issues presented, Beyer urged the Court of Appeals to hold that Morgan State "failed to make a motion for summary judgment that was appropriate, because the motion was made orally rather than through a formal filing of pleadings." *Id.* at 359, 800 A.2d 707. Beyer contended that, because Rule 2–501 states a party "may file at any time," an oral motion on the day of the hearing did not constitute a filing. *Id.* She argued that Rule 2–501 required a paper filing, not an oral motion. *Id.* The Court of Appeals stated:

> Maryland Rule 2–501(e) states that "[t]he court shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." The rule does not contain any language which would require a written motion. In fact, oral motions are permitted expressly by Maryland Rule 2–311(a), which provides "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, and shall set forth the relief or order sought." *See Crews v. Hollenbach,* 358 Md. 627, 638, 751 A.2d 481, 487 (2000)(discussing the trial court's decision to grant both motions for summary judgment which were filed in writing by two parties in advance of a hearing, as well as the oral motions for summary judgment submitted by three other parties at the hearing). Therefore, the form of the motion complied with the rules; the only issue is whether the Circuit Court's decision to grant the motion was legally correct.

*Id.* Thereafter, the Court of Appeals affirmed the grant of summary judgment, thus permitting a party to make an oral motion on the day of the hearing. *Id.* at 360, 800 A.2d 707.

These cases highlighted the conflict between the language of Md. Rule 2–501, which by its terms, allowed a party to make a motion for summary judgment at any time, and Rule 2–504, which required the circuit court to set a deadline for the filing of dispositive motions. As a result, responding to the invitation from the Court of Appeals in *Pittman* and suggestions from members of the bench and bar, the Rules Committee endeavored to clarify when summary judgment motions must be filed by amending Rule 2–501.

During the October 11, 2002 meeting of the Court of Appeals Standing Committee on Rules of Practice and Procedure, the committee members discussed the language of Md. Rule 2–501 permitting a party to file a motion for summary judgment "at any time." *Minutes of the Court of Appeals Standing Committee on the Rules of Practice and Procedure,* 72 (Oct. 11, 2002). In particular, one of the committee members expressed concern with regards to a party's ability to file such a motion at any time even when the scheduling order sets forth a deadline. *Id.* Noting that one of the parties in *Pittman* was allowed to supplement the motion for summary judgment after the deadline, the committee member remarked, "The *Pittman* case provides that a motion for summary judgment can override the deadline in a scheduling order." *Id.* In response, another committee member suggested that the language "at any time" be removed from Rule 2–501(a), in order to clarify that the Scheduling Order is paramount. *Id.* He made a motion to this effect, which passed unanimously. *Id.*

Rule 2–501 was amended and presented at a subsequent Committee meeting on April 11, 2003. *Minutes of the Court of Appeals Standing Committee on the Rules of Practice and Procedure,* 49–57 (April 11, 2003). During that meeting, the vice chair, when presenting the amended version of Rule 2–501, explained that

the phrase "at any time" is proposed to be deleted from several rules, including these three and Rule 2–501, Motion for Summary Judgment, already approved by the Commit-

tee, because the timing of certain procedures must be in accordance with scheduling orders and other rules.

*Id.* at 43. The Committee agreed to the proposed changes to the Rules, approving the changes as presented. *Id.* at 63.

Amended Rule 2–501 was presented to the Court of Appeals on July 30, 2003, in the 152nd Report of the Standing Committee on Rules of Practice and Procedure to the Court of Appeals. *Maryland Register,* Vol. 30, Issue 17 (2003). In the Report, the Committee recommended to the Court of Appeals, among other things, that it amend Rule 2–501 to eliminate the phrase "at any time" in section (a) in order "to make clear that a motion for summary judgment or a discovery request may not be made at any time if the timing is not in accordance with a scheduling order entered under Rule 2–504." *Id.* at 1119.[7] The Committee submitted that the text of Rule 2–501(a) should be as follows:

> Any party may file a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. The motion shall be supported by affidavit if it is (1) filed before the day on which the adverse party's initial pleading or motion is filed or (2) based on facts not contained in the record.

*Id.* at 1125.

The Court of Appeals, by Rules Order dated November 12, 2003, accepted many of the Rules Committee's proposed changes to the Maryland Rules, but declined to accept the proposed changes to Rule 2–501. *Maryland Register,* Vol. 30, Issue 25 (2003). The Court ordered that "the proposed amendments to Rule 2–415, 2–419, 2–501 and 4–261 be, and they are hereby, deferred, pending further study by this

---

7. We noted this proposed purpose in *Thompson v. Baltimore County,* 169 Md.App. 241, 250 n. 8, 900 A.2d 275 (2006), where we wrote:
   Also responding to *Pittman,* the phrase "at any time" was deleted from section (a) "to make clear that a motion for summary judgment may not be made at any time if the timing is not in accordance with a scheduling order entered under Rule 2–504."

Court[.]"  *Id.* at 1809.  Thereafter, the Court held an open meeting regarding the changes to Rule 2–501.

One month later, on December 8, 2003, the Court of Appeals adopted the changes to Rule 2–501, after

> having considered at open meeting, notice of which was posted as prescribed by law, the deferred proposed rules changes, together with comments received, and making certain amendments and additions to the proposed rules changes on its own motion.

*Maryland Register,* Vol. 30, Issue 26, at 1906 (2003).  The Rules Order stated that the changes would take effect July 1, 2004.  *Id.*  The Court's version of 2–501 was similar to the version proposed by the Rules Committee, in that it deleted the phrase "at any time," but, unlike the Rules Committee's version, the Court of Appeals substituted the word "make" for the word "file," thus clarifying that a party need not file a paper motion.  The version adopted by the Court stated:

> Any party may make a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law.  The motion shall be supported by affidavit if it is (1) filed before the day on which the adverse party's initial pleading or motion is filed or (2) based on facts not contained in the record.

*Id.* at 1907–09.  Notably, pertinent to the instant appeal, the Court of Appeals added a Committee Note following subsection (a), which stated:

> Committee note: For an example of a summary judgment granted at trial, *see Beyer v. Morgan State,* 369 Md. 335, 800 A.2d 707 (2002).

*Id.*

While removing the "at any time" language appeared to make it clear that the Scheduling Order would be controlling, as intended by the Rules Committee, the addition of the citation to *Beyer,* and the reference to "summary judgment granted at trial" seemed to suggest that the Court of Appeals intended to continue to allow summary judgment motions to

be made at any time. It was unclear, at the time, whether the addition of *Beyer* was for the purpose of explaining that a party may make a motion for summary judgment orally or, instead, that a party may make a motion for summary judgment at any time, even at trial, thus continuing the conflict between Rules 2–501 and 2–504.

This issue was noted by the Rules Committee at its November 19, 2004 meeting when one committee member remarked:

> A motion for summary judgment under Rule 2–501 may be made at any time, even at trial, as occurred in *Beyer v. Morgan State*, 369 Md. 335, 800 A.2d 707 (2002). In the scheduling order, the judge sets a deadline for filing motions and other papers, so there is sufficient time to process everything. When a Rule such as Rule 2–501 overrides the deadlines in the scheduling order, the entire process is undermined. Scheduling orders should mean what they say.

*Minutes of the Court of Appeals Standing Committee on the Rules of Practice and Procedure*, 57 (Nov. 19, 2004). The Committee resolved to submit the question to a subcommittee for consideration. *Id.* at 59. We are unable to find any indication that, since that time, the Rules Committee has clarified the conflict.

However, in 2007, the Court of Appeals was presented with the opportunity to clarify the apparent incongruity in the Rules in *Rodriguez v. Clarke*, 400 Md. 39, 926 A.2d 736 (2007), where the Court of Appeals was presented with a case pertaining to a motion for summary judgment decided under the amended version of Rule 2–501 and clearly iterated that a motion for summary judgment may be filed at any time, regardless of the provisions of Rules 2–501 or 2–504. *Rodriguez* was a medical malpractice case brought by plaintiffs, the Clarkes, against doctors and a hospital claiming that, when Mr. Clarke underwent surgery for kidney stones, his doctors failed to note irregular electrocardiogram readings, which months later resulted in a massive heart attack and subsequent bypass surgery. *Id.* at 43–44, 926 A.2d 736.

Several defendants filed motions to dismiss alleging that the Clarkes' Certificate of Merit "did not comport with the requirements of Section 3–2A–04 (b) of the Maryland Courts and Judicial Proceedings Article, (1974, 2002 Repl.Vol.)" *Id.* at 46–47, 926 A.2d 736. The trial court postponed ruling on the motions in order to allow the Clarkes to amend their Certificate of Merit by July 15, 2005. *Id.* at 50–51, 926 A.2d 736. Shortly after the court's postponement order, and before the Clarkes filed their Amended Certificate of Merit, several defendants filed motions for summary judgment alleging that " '[s]ince the May 30, 2005 discovery deadline has passed and [the Clarkes] have no experts in this matter,' '[the Clarkes] are unable to sustain their burden in this case.' " *Id.* at 51, 926 A.2d 736.

The trial court found that, because the Clarkes had not properly designated expert witnesses, they could not put on expert testimony and, thus, " 'there's no dispute as to any genuine fact, and the [defendants] are entitled to judgment as a matter of law, given the fact that this case requires expert testimony, and that has not been adequately presented.' " *Id.* at 52, 926 A.2d 736.

The Clarkes appealed to this Court and we held, in an unreported opinion, that "the Clarkes' failure to provide their experts for depositions did not constitute a breach of any Maryland Rule." *Id.* at 54, 926 A.2d 736. According to the Court of Appeals decision, we "asserted that [the defendants] could have filed notices to take the depositions and subpoenaed the various witnesses to attend." *Id.* Thus, "the Clarkes' expert witnesses should not have been stricken and summary judgment should not have been entered for [the defendants]." *Id.*

Several of the defendants appealed and the Court of Appeals granted *certiorari.* Among the various arguments made by the Clarkes on appeal, they contended that the trial court should not have decided a motion for summary judgment that was filed after the deadlines in the Scheduling Order. They argued that,

to allow [the trial court's] decision to stand would be to ignore the [defendants'] own failings, which include not only the failure to notice the depositions of the Clarkes' experts, but to adhere to the trial court's scheduling order. [The defendants'] motions for summary judgment were themselves filed after the deadline for dispositive motions. Thus [the defendants] would at once flaunt the dictates of the trial court's scheduling order, while seeking to enforce it against the Clarkes.

Brief of Respondent at 19, *Rodriguez v. Clarke*, No. 102, Sept. Term 2006. The Court of Appeals specifically addressed this argument at the end of its opinion; however, it did so in a footnote. The Court stated:

The Clarkes further argue that the Circuit Court improperly considered the Petitioners' motion for summary judgment, which was filed after the Scheduling Order's deadline for filing dispositive motions. We disagree. *A motion for summary judgment may be made, even orally, at any time during proceedings. Beyer,* 369 Md. at 359, 800 A.2d at 721.

*Id.* at 74, n. 21, 926 A.2d 736 (emphasis added).

Despite the fact that the Court did not mention the amendments to Rule 2–501, which removed the term "at any time" from the Rule, the Court of Appeals specifically held that, under the current version of Rule 2–501, a party can make a motion for summary judgment "at any time during the proceeding." *Id.* This case is directly on point with the issue in appellant's case. Similar to appellant's case, a motion for summary judgment was filed, not made orally, just a few weeks before trial and after the deadline set forth in the scheduling order. *Rodriguez* mentions specifically *Beyer,* the case cited in the Committee Note following Rule 2–501(a), and is clear that the Court of Appeals, despite removing the language "at any time" from Rule 2–501, nonetheless intends that a party can file a motion for summary judgment at any time.

Accordingly, in the case *sub judice,* the circuit court did not err in considering appellees' Motion for Summary Judgment, even though it was filed after the deadline in the Scheduling Order. We note that the circuit court's actions furthered the purposes of the Rules, which are to be "construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay." Rule 1–201. There was no prejudice to appellant in allowing the motion for summary judgment, as appellant obviously had ample time to respond. Moreover, despite the fact that there was a Scheduling Order deadline, it would be against the interests of judicial economy for a party to be forced to move forward with trial after determining there are no genuine facts in dispute, and he or she is entitled to judgment as a matter of law, merely because the dispositive motion deadline had passed.

## II

Having found that the trial court properly considered appellees' motion for summary judgment, we next turn to appellant's contention that the trial court erred in entering summary judgment in appellees' favor. Appellant essentially makes two arguments in this regard, which, in their entirety, are:

Appellant filed an opposition motion with the Circuit Court on November 4, 2008. The opposition motion was sitting in the docket the same day [the court] granted Summary Judgment to [appellees]. It was never reviewed.

Summary Judgment was granted based on "out of court statements," no substantial evidence from the Police Report and no testimony from the two witnesses at the Worker's Compensation Commission Hearing to prove that Robert Benway was engaged in acts of willful misconduct, had deviated from his employment or was in an unauthorized location.

In her Reply brief, appellant claims:

There is no concrete evidence to prove that Robert Benway was in an unauthorized location, was engaged in willful

misconduct or had deviated from his employment. No DNA evidence or DNA analysis on wire, wire cutters, ladder, location where accident occurred and no cell phone records were offered as evidence. No investigation until a week after the accident. Mr. Richard Rehberger, General Manager of Facility Maintenance of the Maryland Port Administration, took it upon himself to investigate this incident as serious as it was when the Police should have been called immediately.

Appellant alleges that the disputed facts in this case are that (1) Benway was at work on June 26, 2006; (2) he sent her an email at 9:45 a.m.; (3) Benway sustained an accidental injury arising out of and in the course of his employment; (4) Benway did not deviate from his employment and (5) he did not engage in willful misconduct. Again, appellant cites no rules, statutes or cases in support of her position; however, in the exercise of our discretion, we shall address her arguments.

Appellees rebut appellant's argument by pointing to the undisputed testimony of Benway's supervisors and Detective Mize which, according to appellees, "clearly establishes that, in addition to any deviation from his employment, [Benway] was also engaged in willful misconduct, either of which would be sufficient for the Commissioner to deny the workers' compensation claim and for the trial court to grant summary judgment in favor of [appellees]." They argue that a deviation from employment, in this case being at an inactive site with no legitimate business purpose for being there, constitutes a bar to recovery.

Briefly addressing appellant's argument that the trial court did not consider her Opposition to the Motion to Summary Judgment, there is nothing in the record to reflect that this is true. She filed it on November 19, 2008 and the Court signed the Order on November 24, 2008. The court stated "upon consideration of [appellees'] Motion for Summary Judgment and Appellant's response thereto . . . ." Appellant provides no indication that the circuit court failed to consider her Declaration.

Moving on to appellant's argument that the court erred in granting summary judgment due to conflicting evidence, we note initially that, in a workers' compensation claim, when a party aggrieved by a decision of the Commission petitions the circuit court for judicial review, *Livering v. Richardson's Rest.*, 374 Md. 566, 573, 823 A.2d 687 (2003); Md.Code (2008 Rep. Vol., 2009 Supp.), Labor and Employment, L.E. § 9–737, and seeks a jury trial, as appellant did, the trial court conducts a *de novo* review. We recently explained a workers' compensation *de novo* appeal as follows:

> At a trial *de novo*, the burden is upon the appellant to overcome the presumption that the decision of the Commission is *prima facie* correct. This can be done by submitting new evidence, or by relying on the record before the Commission. The jury should be instructed of the Commission's earlier decision and of its presumptive correctness and will be entitled to give it evidentiary significance. The Commission's decision is merely evidence of a particular fact (or facts) which, as with all evidence, the jury is free to disregard if it finds it to be incredible.

*Simmons v. Comfort Suites Hotel*, 185 Md.App. 203, 225, 968 A.2d 1123 (2009) (internal citations and quotations omitted). As with any trial, however, the parties may submit motions for summary judgment if there are no material facts in dispute and a party is entitled to judgment as a matter of law. Md. Rule 2–501.

If the circuit court grants a party's motion for summary judgment, this Court's review of a circuit court's decision to grant summary judgment is *de novo*. *Harford County v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 82, 923 A.2d 1 (2007); *Zitterbart v. Am. Suzuki Motor Corp.*, 182 Md.App. 495, 501–02, 958 A.2d 372, *cert. denied*, 406 Md. 581, 961 A.2d 555 (2008). When deciding a motion for summary judgment, a trial court may "enter judgment in favor of or against the moving party if the motion and response show there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Rule 2–501(f). Where there is no dispute as

to a material fact, this Court's focus is on whether the trial court's grant of the motion was legally correct. *Laing v. Volkswagen of Am.*, 180 Md.App. 136, 152–53, 949 A.2d 26 (2008). In reviewing the grant of summary judgment, we construe the facts properly before the court and any reasonable inferences that may be drawn from them, in the light most favorable to the non-moving party, here appellant. *Id.* We generally limit our review to the grounds relied upon by the trial court. *Ashton v. Brown*, 339 Md. 70, 80, 660 A.2d 447 (1995).

Essentially, appellant's contention is that summary judgment was inappropriate because there were material facts in dispute. In order for there to be disputed facts sufficient for us to hold that granting summary judgment in appellees' favor was error, there must be evidence on which the jury could reasonably find for appellant. *See Clark v. O'Malley*, 169 Md.App. 408, 423–24, 901 A.2d 279 (2006), *aff'd* 404 Md. 13, 944 A.2d 1122 (2008). There is no such sufficient evidence in this case. Appellant failed to provide any evidence upon which a reasonable jury could find in her favor. She was unable to dispute the testimony of Benway's superiors or Mize at the Commission hearing; rather, she simply told the trial court that it should not believe their testimony, without basis. While she offers an alternate theory of the events, she has no evidence to prove her version of the events. Appellant's mere disagreement with the testimony of Benway's supervisors and Mize does not provide a sufficient basis for a dispute of a material fact.

█ The proper standard, as we have previously noted, is that a party must provide the court with more than a different theory of how the events transpired:

> [c]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment and an opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions.

*Carter v. Aramark Sports and Entm't Scrvs., Inc.,* 153 Md. App. 210, 225, 835 A.2d 262 (2003). Clearly, to overcome a motion for summary judgment, appellant was required to provide more than "general allegations which do not show facts in detail and with precision." *Rite Aid Corp. v. Hagley,* 374 Md. 665, 684, 824 A.2d 107 (2003). In light of appellant's failure to provide any additional or different facts from those provided at the hearing, the circuit court did not err in granting summary judgment in appellees' favor.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTI-MORE CITY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**